In the Matter of the Final Judicial Settlement of the Accounts of JOHN HOPKINS and WILLIAM G. HOPKINS, as Trustees of the Trust Created for the Benefit of JEMIMA HOPKINS in and by the Last Will and Testament of WILLIAM H. HOPKINS, Deceased.

CHARLOTTE STRONG SEIXAS, Appellant; JOHN HOPKINS and WILLIAM G. HOPKINS, Individually and as Trustees, etc., under the Will of WILLIAM H. HOPKINS, Deceased; JOHN HOPKINS, as Executor, etc., of JEMIMA HOPKINS, Deceased, and Others, Respondents.

*An adopted child, held not to take under a will giving property to her father and in case of his death to his children.*

A testator by his will provided: " If either of my sons shall die before my wife his share shall go to his children, and, in default of children, to my surviving children and the children of such of them as may be dead."

At the time when the will was made the testator's son Elias was forty-three years of age and was married to a woman forty-seven years of age who had several children by a former husband. Intermediate the execution of the will and the death of the testator Elias adopted one of his stepchildren. Elias died subse-

quent to the testator and prior to the death of the testator's widow without leaving children of his body him surviving.

*Held*, that the stepchild adopted by Elias was not his child within the meaning of the quoted clause of the will, particularly as the statute in force at the time when the will was made and when the testator died, relating to the status of adopted children, provided, " as respects the passing and limitation over of real and personal property under and by deeds, conveyances, wills, devises and trusts, dependent upon the person adopting dying without heirs, said child adopted shall not be deemed to sustain the legal relation of child to the person so adopting so as to defeat the rights of remainderman*."

APPEAL by Charlotte Strong Seixas from a decree of the Surrogate's Court of the county of Dutchess, entered in said Surrogate's Court on the 26th day of April, 1904, settling the accounts of the trustees under the will of William H. Hopkins, deceased, and denying the claim of the appellant to share in the distribution of a trust fund created under said will, and also from an order entered in said Surrogate's Court *nunc pro tunc* as of the 26th day of April, 1904, denying the appellant's motion for leave to file objections to the accounts of the said trustees.

*Gordon Gordon*, for the appellant.

*Allison Butts* [*John Hackett* and *Joseph A. Daughton* with him on the brief], for the respondents.

WILLARD BARTLETT, J. :

The will of William H. Hopkins was executed on November 27, 1888. The testator died on May 22, 1890. The will created a trust fund for the benefit of the testator's wife during her life and directed the executors " after her decease to divide the principal, and whatever interest may not have been paid my said wife, into four equal shares or parts, and one of said parts shall be paid to my son Elias T. Hopkins; one part to my son John Hopkins; one part to my son William G. Hopkins; and one part shall be held by my executors and by them invested in good securities, and the interest thereof shall be applied by them towards the maintenance and support of my said daughter Hattie Titus during her life, and after her death the principal shall be equally divided among her children." The will further provided as follows : " If either of my sons shall die before my wife, his share shall go to his children, and in default

* *Sic.*

# 460     MATTER OF HOPKINS.

of children, to *my* surviving children and the children of such of them as may be dead."

The testator's son Elias T. Hopkins died on April 4, 1903, before the testator's widow, whose death occurred on the fourth day of December in the same year.

Elias T. Hopkins left no children of his body him surviving. At the time when his father's will was made, however, Elias occupied the relation of stepfather to four children, the offspring of his wife by a former marriage. The appellant, Charlotte Strong Seixas, was one of these children. Intermediate the execution of his father's will and the death of his father, Elias T. Hopkins adopted the appellant, by an order of the County Court of Kings county made on the 16th day of November, 1889. None of the other stepchildren appear to have been adopted. The question presented in this proceeding is whether the appellant is entitled to take under that clause of the will of William H. Hopkins which provided that if either of his sons (of whom Elias T. Hopkins was one) should die before the testator's wife his share should go to that son's children.

I think that the learned surrogate was right in answering this question in the negative.

While a will is usually deemed to speak from the testator's death, it may be regarded as speaking from its date when it refers to an actually existing state of things or a fair construction indicates that such was the testator's intention. ( *Wetmore* v. *Parker*, 52 N. Y. 450, 463, and cases there cited; *Rogers* v. *Rogers*, 153 id. 343.) The inquiry here is what persons the testator had in contemplation when he spoke of the " children " of his sons (including Elias) at the time of the execution of his will on November 27, 1888. Elias had no children of his own. It is not pretended that the testator intended the gift over to go to all four of the stepchildren of Elias. But we are asked to hold that the will speaks only from the death of the testator, and that inasmuch as the appellant, one of these stepchildren, had been adopted when the testator died, she falls within the class of children who were to take in the event of the failure of the first gift. In support of this view it is argued that the testator either meant that the appellant should take or else he meant nothing, " for he knew Elias, who was nearly fifty years old, with a wife fifty years old, would never have any issue of his body."

It seems to me that this would be a forced construction and one that we should not be justified in adopting. No sufficient reason is assigned why one of the stepchildren of Elias should be thus preferred by the testator over the three others. The statute relating to the effect of the adoption of children, as it existed at the time when the will was made and when the testator died, provided that "as respects the passing and limitation over of real and personal property, under and by deeds, conveyances, wills, devises and trusts, dependent upon the person adopting dying without heirs, said child adopted shall not be deemed to sustain the legal relation of child to the person so adopting so as to defeat the rights of remainderman*." (Laws of 1873, chap. 830, § 10, as amd. by Laws of 1887, chap. 703.) To treat the appellant as one of the " children " of Elias T. Hopkins within the meaning of his father's will would seem to be in direct conflict with the language of this statutory provision. The learned counsel for the appellant goes further than the facts warrant in his implication that the testator must have known that Elias could never beget any children. According to the testimony of the appellant her mother and her stepfather were respectively thirty-six and thirty-two years of age when they were married in 1877. This would make the wife forty-seven and the husband forty-three years old in 1888 when the will was written. It is abundantly established by medical authority that it is possible for a woman to become a mother at forty-seven (3 Whart. & Stillé Med. Juris. [4th ed.] §§ 199, 200 ; Tayl. Med. Juris. [12th Am. ed.] 665 ; Draper Leg. Med. 112), and while the probability of pregnancy decreases rapidly after the age of forty-five, child-bearing subsequent to that period is not such a rare event as warrants the assumption that the testator in the case at bar must have deemed it an impossibility.

I can find no sufficient reason for the conclusion that the testator intended to include the appellant under the designation " children " in the clause of his will which this appeal brings up for construction, and I, therefore, advise an affirmance of the surrogate's decree.

JENKS, RICH and MILLER, JJ., concurred; HOOKER, J., not voting.

Decree of the Surrogate's Court of Dutchess county affirmed, with costs.

---

* Sic.