## Matter of the Estate of LUCIUS H. FOSTER, Deceased.

(Surrogate's Court, Wayne County, September, 1919.)

**Decedents' estates — an adopted child of deceased legatee entitled to take under will of parent of deceased legatee.**

> Where a daughter and legatee of decedent predeceased him, her legally adopted daughter, who survived her, is entitled to that portion of decedent's estate that her foster mother would have taken had she survived the decedent.

JUDICIAL SETTLEMENT of the accounts of the executor. Contested claim.

Charles C. Congdon, for claimant.

J. Francis Lines, for executor.

Byron C. Williams, for Agnes E. Foster, Jean Augusta Foster and Catherine Maria Foster.

KNAPP, S. On the 10th day of April, 1918, Lucius H. Foster died a resident of the village of Palmyra, Wayne county, N. Y., leaving a last will and testament bearing date the 10th day of February, 1906. On the 29th day of April, 1918, the decedent's will was admitted to probate in the Surrogate's Court of Wayne county and letters testamentary were granted to George S. Johnson, the executor named.

On the 18th day of July, 1919, the executor filed his petition for judicial settlement of his accounts as executor. Upon the return day of the citation Marjorie Seward Johnson appeared in court and claimed to be interested in the estate and to be entitled to a one-fourth interest therein.

Her claim was contested, and whether or not she is right in her contention is the question here for determination.

Mary C. Johnson was the daughter of Lucius H. Foster, the decedent, and the wife of George S. Johnson, the accounting executor herein. Marjorie S. Johnson was regularly adopted by George S. Johnson and Mary C. Johnson on the 22d day of May, 1906. Mary C. Johnson died May 11, 1913. The question for determination is, does Marjorie S. Johnson take the share of Mary C. Johnson, her foster mother, in the estate of Lucius H. Foster, father of Mary C. Johnson?

The decedent after making certain bequests in the second paragraph of his will which are not material here provides in the third paragraph thereof as follows: "*Third.* All the rest, residue and remainder of my estate, both real and personal, and wheresoever the same may be situate, I give, devise and bequeath unto my four daughters viz; Mary C. Johnson, Agnes E. Foster, Jean Augusta and Catherine Maria Foster, share and share alike."

Section 114 of the Domestic Relations Law, so far as it applies to this case, is substantially as follows:

"*Effect of adoption.* Thereafter the parents of the person adopted are relieved from all parental duties toward, and of all responsibility for, and have no rights over such child, or to his property by descent or succession * * *. His rights of inheritance and succession from his natural parents remain unaffected by such adoption. The foster parent or parents and the person adopted sustain toward each other the legal relation of parent and child, and have all the rights and are subject to all the duties of that relation, including the right of inheritance from each other * * * and such right of inheritance extends to the heirs and next of kin of the person adopted, and such heirs and next of kin shall be the same as if he were the legitimate child

Surrogate's Court, Wayne County, September, 1919.   [Vol. 108.

of the person adopting, but as respects the passing and limitation over a real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the person adopted is not deemed the child of the foster parent so as to defeat the rights of remaindermen.''

Section 29 of the Decedent Estate Law reads as follows:

'' Whenever any estate, real or personal, shall be devised or bequeathed to a child or other descendant of the testator, or to a brother or sister of the testator, and such legatee or devisee shall die during the life time of the testator, leaving a child or other descendants who shall survive such testator, such devise or legacy shall not lapse, but the property so devised or bequeathed shall vest in the surviving child or other descendant of the legatee or devisee, as if such legatee or devisee had survived the testator and had died intestate.''

The word '' adoption '' is a broad term and of great significance.

Webster's Dictionary, as well as the Imperial Dictionary, defines adoption to be '' the act of adopting, or state of being adopted; the taking and treating of a stranger as one's own child.''

The Encyclopedia Britannica defines it to be '' the act by which the relations of fraternity and affiliation are recognized as legally existing between persons not so related by nature.'' And Worcester defines the word '' adopt '' '' to receive and treat as a son or daughter one who is the child of another; to affiliate, to take, select and assume as one's own.'' *Simmons* v. *Burrell,* 8 Misc. Rep. 388.

'' The act of one who takes another's child into his own family, treating him as his own, and giving him

all the rights and duties of his own child." Black Law Dict. 42.

Adoption flourished and was regulated by law in both of the classical nations of antiquity. In Greece it was known and recognized. In Rome the system was in vogue long before the time of Justinian.

It was not known to the common law and exists in this state only by virtue of the statute. *Matter of Thorne,* 155 N. Y. 140.

The first general statutory provision in this state as to adoption was contained in the Laws of 1873, chapter 830. It is interesting to note that under section 10 of the statute I have just quoted, the right of inheritance was not given to the adopted child and not until by chapter 703 of the Laws of 1887 could adopted children inherit or take as next of kin from the persons adopting them in this state.

By section 10 of this act the right of inheritance was given to the adopted child with certain restrictions. This continued to be the law of this state until the statute of 1887 was amended by chapter 272 of the Laws of 1896. This act not only gave the right of inheritance to the adopted child, but it also extended the right of inheritance to the heirs and next of kin of the minor, and that the heirs and next of kin should be the same as if the adopted child were the legitimate child of the person adopting.

By chapter 19 of the Laws of 1909 the statute was again amended and still farther broadened by further providing that the natural parents of the minor so adopting were not only relieved from all parental duties toward, and of all responsibility for such minor, but that the natural parents should have no rights over said child or to his property by descent or succession.

The statute today as to the effect of an order of

Surrogate's Court, Wayne County, September, 1919. [Vol. 108.

adoption is the same as the last that I have quoted. The purpose of this discussion is to show that from the earliest times in this state, since adoption was permitted by statute, it has been the policy of the law from time to time to broaden the rights of the adopted child, to sever the connection as much as possible between the natural parent and the child adopted and to make as far as the law could, the relation existing between the foster parent and the adopted child the same as though the child adopted had been the natural child of the foster parents.

It has been urged upon me in the brief of counsel opposing the claim of Marjorie S. Johnson, that she could not inherit from the father of her foster mother. There is support for that doctrine in the case of *Winkler* v. *New York Car Wheel Co.,* 181 App. Div. 239.

In my view of this case, the question cannot be determined by the question of inheritance. This decedent died testate and not intestate. Whatever the questions that may have arisen as to the right of inheritance of this claimant had this decedent died intestate do not in my judgment arise in this case, the decedent having bequeathed his property to his children by his last will and testament.

Inheritance is defined in Bouvier's Law Dictionary, volume 1, page 633, as follows: "A perpetuity in lands to a man and his heirs; or it is the right to succeed to the estate of a person who died intestate."

In 2 Blackstone's Commentaries it is defined as an estate in things real descending to the heirs.

In the Statute of Descent and Distribution in this state, inheritance is defined as follows: " Inheritance means real property as herein defined descending according to the provision of this article."

Inheritance is the estate in real property which the

law, immediately on the ancestor's decease, casts on the heir. *Appeal of Dodge,* 106 Penn. St. 216.

While strictly the word " inheritance " relates only to real estate taken by descent from one dying intestate, still as far as adopted children are concerned under the statutes relating to adoption, the word is used in a broader sense and is commonly accepted as a right to both real and personal property of which the parent died seized and owning. *Simmons* v. *Burrell,* 8 Misc. Rep. 388, 405.

Mary C. Johnson, the daughter of the decedent, having predeceased him, the question arises whether or not, under section 29 of the Decedent Estate Law, this legacy to Mary C. Johnson lapses.

It is not open to question now in this state, both by statute and decisions, that had Mary C. Johnson survived her father even for a single day, so that the legacy had become vested in her, and she then had died intestate, but that this adopted daughter of hers would have inherited from her foster mother.

At least since 1829 down to 1912, section 29 of the Decedent Estate Law was in the same language as it is today, except the words " brother or sister " were not then in the statute.

By chapter 384 of the Laws of 1912 the statute was broadened to include a " brother or sister " of the testator and as such is now the law of today.

It will be observed as I have shown in a discussion of the question of adoption that the statute law of this state has been gradually broadened for the benefit of the adopted child and to protect its rights, so the statute preventing the lapsing of legacies has also been broadened and now prevents the lapsing of legacies devised or bequeathed to a brother or sister of the testator as well as to the children or other descendants of his.

Surrogate's Court, Wayne County, September, 1919. [Vol. 108.

The question now arises was Marjorie S. Johnson a child or descendant of Mary C. Johnson so as to bring her within the provisions of the statute, and thereby prevent the lapsing of this legacy given to her foster mother.

Section 114 of the Domestic Relations Law, relating to adoption of children, provides that: "The foster parent or parents and the person adopted sustain toward each other the legal relation of parent and child, and have all the rights and are subject to all the duties of that relation."

In *Matter of Cook,* 187 N. Y. 253, 260, the court says: " Thus the statute gives to an adopted child the same legal relation to the foster parent as a child of his body, and that relation extends to the heirs and next of kin of the child by adoption the same as to those of a child by nature. The artificial relation is given the same effect as the actual relation, so far as the right of succession is concerned, and the statutory grandchild and grandparent inherit from each other the same as if the relation had been created by nature. In other words, the legislature has ordained that there shall be no difference in the right to inherit between a child by adoption and his heirs and next of kin and a child by nature and his heirs and next of kin, and the courts, as in duty bound, have obeyed the command."

Again the court says: "A lineal descendant is one who is in the line of descent from a certain person, but, since the Domestic Relations Law went into effect, not necessarily in the line of generation. The line of descent is the course that property takes according to law when the owner dies. By force of the statute that course is the same in the case of adopted children that it is in the case of own children. In the eye of the

law, therefore, adopted children are lineal descendants of their foster parent. They are in the line of descent from him through the command of the statute, the same as if that line had been established by nature. The legislature created the relation and extended it to the right of inheritance, not only as between the foster parent and the adopted child, but also as between the children of the adopted child and the foster parent.''

In *Matter of MacRae,* 189 N. Y. 142, 147, the court cites with approval from *Matter of Cook* and then says: '' The adoption divests the natural parents of the relation which they had theretofore sustained toward the infant and such change of relation is in no way affected by the death of the foster parent or parents. Madeleine continued after the death of her foster parents as much their child in law as if she had been born to them.''

In the case of *Carpenter* v. *Buffalo General Electric Company,* 213 N. Y. 101, the court says: '' When the legislature provided that the heirs at law and next of kin of the adopted child should be the same as if he were the legitimate child of the person adopting, the adopted child, in a legal sense became the natural child of the adoptive parent.''

In *Matter of Roebuck,* 79 Misc. Rep. 589, the court says: '' 'A lineal descendant is one who is in the line of descent from a certain person.' But the line of descent is not merely derived from the communication of blood by animal generation. ' The line of descent is the course that property takes according to law when the owner dies.' ''

As showing the trend of decisions in this state and the length to which they have gone in providing for an adopted child, the case of *Bourne* v. *Dorney,* 184 App. Div. 476, is interesting.

That was a decision under section 26 of the Dece-

Surrogate's Court, Westchester County, September, 1919. [Vol. 108.

dent Estate Law which provided that whenever a testator should have a child born after the making of his last will, etc.

It will be noticed that the words of the statute here speak of a child *born of a testator,* and still in the face of that almost positive language the court held that an adopted child filled the requirements. The right to take property upon the death of a person is not an inherent right, but only a statutory one. The legislature in its wisdom has the right to pass laws prescribing the manner and method of the descent and distribution of property. It has the same right to provide for the taking of property by a devise or bequest, so the legislature has also the undoubted right to place, so far as property is concerned, an adopted child in the same place and relation to its foster parents as if such child had been born to them.

It is my conclusion that Marjorie S. Johnson is entitled to that portion of the estate of Lucius H. Foster that her foster mother would have had had she survived the decedent.

Decreed accordingly.