In the Matter of the Estate of EDWARD H. MARSH, Deceased.

Surrogate's Court, Kings County, May 6, 1932.

*Rumsey & Morgan*, for the City Bank Farmers Trust Company, successor cotrustee.

*J. Albert Lane*, for the claimants Edward H. Marsh, Marion Penelope Marsh and Morrison Marsh.

*Harry H. Servis*, for Edward D. Miller.

WINGATE, S.   The sole question here presented for determination is whether a child, adopted by the daughter of testator twenty-four years after the date of the latter's will, is within a testamentary description of " descendants " of such daughter.

Edward H. Marsh executed the will which is the subject-matter of this construction on December 28, 1883.   He died less than three months later.   He was survived by a widow, by two children of a prior marriage, Charles and Frank, and by a daughter of his then existing marriage, Harriet.

The fifth item of his will, so far as presently material, reads as follows: " I direct my Executors and Executrix to invest one-third of my said estate and to pay the income thereof to my widow during her natural life and at her death the said one-third is to be equally divided between my children who shall then be living and the descendants of those who shall then be dead grandchildren taking *per stirpes* and not *per capita*."

Testator's son Charles died in 1895, childless and unmarried; Frank died in 1916, leaving three blood children, Edward, Marion and Morrison, who are parties to this proceeding; Harriet died in 1930 leaving no blood children, but an adopted child, Edward Doring Miller, whose rights, if any, under the quoted testamentary direction are the cause of the present controversy.

The widow, to whose life use the portion of the estate presently distributable was dedicated, died on October 15, 1931.

The subject of the property rights of an adopted child, resulting from the creation of the new relationship, is one on which there appears to be some confusion of ideas.   Since, under the pertinent statutes and decisions of this State, the situation is entirely clear, it may be of some general utility to attempt a review of the law so far as it applies to the facts now presented for decision.

Whereas the relationship of adoption was recognized in almost every other system of jurisprudence, including the Greek, Roman, ancient German, French and Spanish, it was unknown to the common law of England, and so far as it presently exists in the United States, is purely the result of statute.   (*United States Trust Co.* v. *Hoyt*, 150 App. Div. 621, 624; *Matter of Davis*, 142 Misc. 681, 688.)

Perhaps the earliest enactment of this State relating to the matter is found in chapter 244 of the Laws of 1849, which incor-

porated the American Female Moral Reform and Guardian Society which was authorized, in effect, to apprentice children surrendered to it. The first general statute on the subject is contained in chapter 830 of the Laws of 1873.

So far as concerns statutory regulation of the rights of an adopted child, the New York enactments have really been only three in number, that of 1873, chapter 703 of the Laws of 1887, which while purporting to be merely an amendment of the former, was in reality a radical alteration of existing law and policy, and chapter 272 of the Laws of 1896, which was little more than a paraphrase of the statute of 1887.

The pertinent enactments of 1873 and 1887 may conveniently be combined for purposes of comparison, the original text of the statute of 1873, so far as continued by the 1887 enactment, being printed in ordinary type, the single word omitted being bracketed, and the additions made by the act of 1887 being shown in italics. As thus differentiated, the enactments read:

"§ 10. A child, when adopted, shall take the name of the person adopting, and the two thenceforth shall sustain toward each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation, [excepting] *including* the right of inheritance, *and the heirs and next of kin of the child so adopted shall be the same as if the said child was the legitimate child of the person so adopting,* except that as respects the passing and limitation [s] over of real and personal property, under and by deeds, conveyances, wills, devises and trusts, *dependent upon the person adopting dying without heirs,* said child adopted shall not be deemed to sustain the legal relation of child to the person so adopting *so as to defeat the rights of remainderman, and in case of the death of the person so adopted the person so adopting as above provided shall, for the purpose of inheritance, sustain the relation of parent to the person so adopted.*"

It will be noted from the foregoing that, under the act of 1873, personal relations only were created between the person adopted and the foster parent, and all property rights of any description were carefully and completely excluded.

The changes effected in 1887 removed a portion of this disability. These changes were that property rights were created corresponding in all respects with those which would have existed had the child been the natural issue of the foster parent, *first*, as between the two parties to the adoption, and *second*, in respect to the property of the person adopted.

It should be noted, however, that the child was given no inheritable rights in the property of any person except the adoptive

parent, and that it was expressly provided that he should not be considered to sustain the relationship of child in a manner which in the construction of any written instrument conditioned on the foster parent dying without heirs would defeat a substitutional gift over.

The legal results of the rewriting of the statute in chapter 272 of the Laws of 1896 were identical, and this law has been continued without substantial change to the present day. As presently existing, these provisions are contained in section 114 of the Domestic Relations Law (as amd. by Laws of 1931, chap. 562) and read:

" The foster parent or parents and the *person adopted* sustain toward each other the legal relation of parent and child, and have all the rights and are subject to all the duties of that relation, including the right of inheritance from each other, [except as the same is affected by the provisions of this section in relation to adoption by a stepfather or stepmother], and such right of inheritance extends to the heirs and next of kin of the *person adopted,* and such heirs and next of kin shall be the same as if he were the legitimate child of the person adopting, but as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the *person adopted* is not deemed the child of the foster parent so as to defeat the rights of remaindermen."

This enactment is identical in language with that contained in section 64 of chapter 272 of the Laws of 1896, except that the words in brackets were not then included, but were added by chapter 408 of the Laws of 1897, and further except that in the 1896 statute the word " minor " was in three places inserted for the italicized words " person adopted." The word " minor " continued to appear in these three places following the enactment of the Consolidated Laws (Laws of 1909, chap. 19) until it was changed to " person adopted " by the amendment contained in chapter 352 of the Laws of 1915.

It will be seen, therefore, that the laws of New York on this subject are naturally divisible into three periods, *first,* that prior to 1873, when no rights of adoption were recognized; *second,* between 1873 and 1887, when personal, but no property, rights could be created; and *third,* subsequent to 1887, when in addition to personal rights, the adopted child was constituted in all respects a natural child so far as concerned (1) direct inheritance by the adopted child from the foster parent and (2) inheritance by the foster parent or his next of kin from the adopted child.

All of the decisions of the State, with a single possible exception, are logical declarations of these rights.

Since the enactments in force since 1887 have made the adopted child in all respects a natural child of the foster parent, in so far as concerns the property of the latter, such child is his heir at law and next of kin, and entitled to inherit from him in that capacity in case of his death intestate. (*Rosekrans* v. *Rosekrans*, 163 App. Div. 730, 732; *U. S. Trust Co.* v. *Hoyt*, 150 id. 621.) The same would, and has been held to apply to the distribution of the remainder of a testamentary trust in which the distributees were specified as those who would take in case of the death intestate of the foster parent (*Dodin* v. *Dodin*, 16 App. Div. 42, 46; affd., 162 N. Y. 635), and in a trust *inter vivos* to his heirs at law. (*Gilliam* v. *Guaranty Trust Co.*, 186 N. Y. 127, 134.) In each of these cases a distribution under, or in the terms of, the statutes of descent and distribution is invoked, and the right of inheritance from the foster parent having been given, the result is inevitable.

All of these cases in which direct devolution from the foster parent is involved or a gift in similar manner is directed, emphasize the identity of the artificial relation created between the parties to the adoption, with that which would exist by nature, and the analogy has uniformly been maintained in the solution of related questions; thus it has been held that the adoption of a child subsequent to the making of a will which did not provide for him, will effect a *pro tanto* revocation of the terms of the testamentary disposition, under section 26 of the Decedent Estate Law (*Bourne* v. *Dorney*, 184 App. Div. 476, 478; affd., 227 N. Y. 641); that an adopted child will take a testamentary gift by substitution for its foster parent under section 29 of the Decedent Estate Law (as amd. by Laws of 1912, chap. 384; *Matter of Foster*, 108 Misc. 604, 612); and, even more obviously, that the provisions of the Transfer Tax Law are to be construed so that property passing to the adopted child from the foster parent is to be taxed on the basis of devolution to a child and not to a stranger. (*Matter of Cook*, 187 N. Y. 253.)

In short, so far as concerns all *direct* relations between the foster parent and the adopted child, not in any way involving the rights or property of third persons, the legal results are precisely the same as if the adopted child were the lawful flesh and blood of the foster parent.

When, however, the rights or property of third persons, not direct parties to the proceeding for adoption, are involved, different considerations and results follow.

It has been noted that the statute creates the rights of parent and child only between the parties to the adoption. It does not make the adopted child the real child of the foster parent for pur-

poses of inheritance from any third party. In this respect, the statute has always been construed strictly, as is proper, since it is in derogation of common-law rights. (*Psota* v. *Long Island R. R. Co.*, 246 N. Y. 388, 393; *Dean* v. *Met. El. Ry. Co.*, 119 id. 540, 547.) It follows, therefore, that if the foster parent be dead, the adopted child is not a next of kin or distributee on intestacy of the natural relatives of the foster parent (*Matter of Powell*, 112 Misc. 74; affd., 193 App. Div. 965; *Hopkins* v. *Hopkins*, 202 id. 606; affd., 236 N. Y. 545; *Matter of Hall*, 234 App. Div. 151; *Matter of Welton*, 141 Misc. 674), and the same has been held, in effect, in respect to a recovery for the death of a relative of the foster parent under the Workmen's Compensation Law. (*Winkler* v. *N. Y. Car Wheel Co.*, 181 App. Div. 239.) In other words, as is said in the last cited case (at p. 241): " It is apparent, from the provisions of this statute, that the adoption does not change the law of descent and distribution as to the property of the ancestors of the foster parent; that the right of inheritance is extended only as between the foster parent and adopted child, and between the children of the adopted child and the foster parent; that while the adopted child, for the purposes of inheritance, becomes and is the lawful child of the adopting parent, the statute does not provide that it shall become his child, or make it the heir at law or next of kin of his father or of any of his collateral relatives. The identity of the child is not changed. It is given the right to inherit as a child without being a child, and that is as far as the statute goes. There is nothing in the statute to lead to the belief that it was the intention of the Legislature to permit one to adopt heirs for third persons.

" Without something in the statute clearly indicating that the Legislature intended such a provision it cannot be arbitrarily inferred by the courts to give effect to an assumed object or purpose of a statute. Consanguinity is so fundamental in statutes of descent and distribution that it may only be ignored when courts are forced to do so, either by the terms of express statute or by necessary implication."

It is at this point that some apparent inequity is to be found. Whereas the adopted child is not permitted to inherit from the collateral relatives of the foster parent, the reverse is true respecting their inheritance from him. (*Carpenter* v. *Buffalo General Electric Co.*, 213 N. Y. 101.) That this somewhat anomalous result is caused by the terms of the statute itself and not by reason of its judicial interpretation, is obvious from the fact that while the rights of inheritance given the adopted child are only from the foster parent, it is enacted that the heirs and next of kin of the adopted child " shall be the same as if he were the legitimate child of the person adopting * * *."

The remaining, and for purposes of present decision the most important phase of the subject, concerns the rights of the adopted child to take under wills or other written instruments by virtue of inclusion in a class description. The problem in such cases no longer concerns itself with the presence or absence of rights of inheritance under the statute. In its stead are substituted two differing considerations. The first relates to the intention of the person making the gift or other direction, as evidenced by his language and situation, and the second involves the proper application of the exception in the statute that " * * * as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the person adopted is not deemed the child of the foster parent so as to defeat the rights of remaindermen."

It is, of course, primary that in the interpretation of wills and other similar documents, the intent of the author respecting the objects of his beneficence is to be determined as of the time of its execution. (*Matter of Morningstar*, 143 Misc. 620, and cases cited; *Matter of Hopkins*, 102 App. Div. 458, 460.) This thought is emphasized with particular clarity in the present connection in *New York Life Insurance & Trust Company* v. *Viele* (161 N. Y. 11).

In that case Mary Griffin executed a will on July 6, 1878, and a codicil on July 28, 1882, and died on March 9, 1888. This will erected a trust of one-third of the residuary estate with income therefrom payable to her daughter Emily for life, and upon her death it was directed that the principal be paid " to her then living lawful issue, if any, and if she leaves her surviving no such issue " that it be added to certain additional residuary shares of named grandchildren.

In 1876 Emily adopted Olga. The question was whether Olga was entitled to take under this description. In holding that she was not, the court says (at p. 19): " The meaning and intention of the testatrix in the use of the words ' lawful issue ' in her will must be ascertained by the application of the rules and principles sanctioned by the courts of this state in the construction and interpretation of wills. * * *

" The words ' lawful issue,' when used in a domestic will, primarily and generally mean descendants."

Page 20: " Where there is nothing to the contrary to be found in the context of the instrument or in extraneous facts proper to be considered, that is the sense in which they are presumed to be used in a will. The real question in this case is whether the testatrix used them in that sense or in some other sense. * * *

" We think that the context of the instrument shows quite

clearly that she used these words in their primary and general sense as including descendants and not children by adoption."

Page 22: " This is altogether the more reasonable construction to place upon the words ' lawful issue ' in her will, and this view is reinforced by the settled rule of law which favors such an interpretation as will permit the estate to pass to those persons who are in the line of ancestral blood. (*Knowlton* v. *Atkins,* 134 N. Y. 313; *Wood* v. *Mitcham,* 92 N. Y. 375; *Quinn* v. *Hardenbrook,* 54 N. Y. 83; *Scott* v. *Guernsey,* 48 N. Y. 106; *Kelso* v. *Lorillard,* 85 N. Y. 177; *Van Kleeck* v. *Dutch Church,* 20 Wend. 457.) * * *

" Under the language of the will, and the law governing its interpretation, the expression ' lawful issue ' denotes the offspring of Emily only. (*Barnes* v. *Greenzebach,* 1 Edw. Ch. 41; *Schafer* v. *Eneu,* 54 Pa. St. 304; *Wyeth* v. *Stone,* 144 Mass. 441.) "

Similar results have been attained where the gift was to testator's surviving children " and the children of such of them as may be dead " (*Matter of Hopkins,* 102 App. Div. 458); where the trust remainder was payable on the death of the life tenant " leaving a child or children surviving him * * *, to such child or children," or in default thereof that it should fall into the residue of the estate (*Matter of Leask,* 197 N. Y. 193); where the remainder was limited to the " issue " (*Matter of Cottie,* 121 Misc. 665) or " lawful issue " of the life tenant (*Matter of Hoyt,* 120 Misc. 188); or to testator's " nephews and nieces " (*Matter of Haight,* 63 Misc. 624) or " grandchildren " (*Matter of Levy,* 138 Misc. 670).

Of course, if it can be determined with any certainty that testator intended to include an adopted child among his beneficiaries, as was held in *Matter of Horn* (256 N. Y. 294; see, also, *Von Beck* v. *Thomsen,* 44 App. Div. 373; affd., 167 N. Y. 601), he would take, but the burden of proof in this demonstration would unquestionably be upon the claimant.

The only judicial result in even colorable conflict with these views is the Special Term decision in *United States Trust Co.* v. *Hoyt* (115 Misc. 663; affd., without opinion, 173 App. Div. 930, and 223 N. Y. 616), which held that the adopted daughter of a deceased brother was entitled to share in the remainder distribution of a trust limited to the next of kin of the life tenant. On its face this is contrary both to reason and the overwhelming weight of authority. In *Hopkins* v. *Hopkins* (202 App. Div. 606, 608) this holding was treated as a consequence of an earlier unappealed decision, and, therefore, little if any more than an authority for the principle of *stare decisis*. In any event, the majority of the court refused to follow its authority, in which course they received the unanimous approval of the Court of Appeals (236 N. Y. 545).

The final question of interest relates to the statutory exception above noted, that where a limitation over is conditioned on the foster parent dying without heirs, the adopted child shall not be deemed a child to defeat the rights of remaindermen.

The meaning of this direction has been so clearly and exhaustively treated in *Matter of Leask* (197 N. Y. 193) that additional extended consideration of the subject would be superfluous. The interpretation therein applied makes it obvious that when a gift is given to a foster parent on the condition that he be alive at the time of distribution, failing which it is to go first to his children, by whatever name designated, or in default thereof, to others, an adopted child cannot take.

The application of the foregoing principles to the case at bar is obvious. There is here no question of intestate inheritance, but merely of testamentary interpretation. The will of the testator was drawn at a time when adoption with its present implications was unknown, and twenty-four years before the present claimant was adopted. To conjecture that the mind of the testator on December 28, 1883, could have envisaged, much less intended, the conferring of a benefit upon this person who was, a quarter of a century later, to have then unheard of rights conferred upon him by testator's daughter, places too great a strain upon the imagination. The ordinary natural meaning of " descendant " is lineal issue. The Century Dictionary defines the word as " an individual proceeding from an ancestor in any degree; issue, offspring, near or remote." Worcester defines " descendant " as " the offspring of an ancestor; progeny." (See, also, *Mitchell v. Thorne*, 134 N. Y. 536, 540; *Matter of Moore*, 90 Hun, 162, 167.) Such is and always has been the natural connotation of the term, and under the facts of this case it cannot be imagined that the testator used it in any other sense. The language taken from *Matter of Cook* (187 N. Y. 253), decided in 1907, on which the adopted child so greatly relies, can have no bearing on what the testator meant in 1883 by the words which he then used, even if it were proper to wrest this language from its context and applicability to the question then presented to the court for decision, which it is not.

Finally, this adopted son comes squarely within the exception of the statute as construed in *Matter of Leask*. The gift of this remainder is in effect to Charles, Frank and Harriet with a provision that if any of them died without issue, it should pass to their survivors, or the issue of those who had died leaving issue. If any one of testator's children could prevent the passing of his share to the others on his death by adopting a child, he would

clearly, by such act, be defeating, within the inhibition of the statute, the rights of the remaindermen who would take in the event of his dying without heirs.

For both reasons, therefore, Edward Doring Miller cannot share in this remainder, which must be distributed in equal portions to Edward, Marion and Morrison Marsh.

Proceed accordingly.