HELEN MORTON and Another, Plaintiffs, *v.* AMERICAN SECURITY AND TRUST COMPANY, etc., and Others, Defendants.

Supreme Court, Special Term, New York County, April 21, 1936.

*Davis, Polk, Wardwell, Gardiner & Reed* [*Walter D. Fletcher, William M. Hobson* and *Atwood H. Miller* of counsel], for the plaintiffs.

*Morris & McVeigh* [*Joseph W. Goodwin* of counsel], for the defendants John Philip Rutherfurd and others.

*Lewis Spencer Morris,* guardian *ad litem* for Guy Gerard Rutherfurd.

*Francis R. Appleton, Jr.,* guardian *ad litem* for the defendants Lewis Peter Morton and another.

*John Caldwell Myers,* guardian *ad litem* for the defendant Anne Livingston Eustis and another.

*Ehrich, Royall, Wheeler & Walter,* for the City Bank Farmers Trust Company, as guardian *ad litem* and general guardian of defendant William Hazlett Minor, Jr.

*Appleton, Rice & Perrin,* for the defendants The Girard Trust Company, as trustee, and Charles J. Hepburn, as nominated trustee.

*Agar, Ely & Fulton,* for the defendant American Security and Trust Company, as trustee.

CALLAHAN, J. Action for the construction of the will of Anna Livingston Morton.

The testatrix died in 1918, a resident of the District of Columbia, leaving a will executed in 1916. At the time of its execution she was domiciled in the District of Columbia.

The testatrix was survived by three daughters, Edith Livingston Morton Eustis, Helen Morton and Mary Morton, and six grandchildren, children of her deceased daughter Alice Morton Rutherfurd,

By the fourth article of her will the testatrix gave her residuary estate in trust in as many shares as she should leave children surviving her or children predeceasing her who left issue.

On the death of the daughters the will provided:

" I give, devise and bequeath her said share, to be equally divided among her issue, if any, living at her death, in equal shares, *per stirpes* and not *per capita,* and in default of such issue, to and among her heirs at law and next of kin, to be equally divided among them, *per stirpes* and not *per capita,* subject, however, to the execution by my said child of the following powers hereby conferred upon her:

(4) I also authorize and empower each of my said children, who may leave no issue surviving her, by her last will and testament to dispose of one-half of the principal of her said share remaining at her death, as she may desire, the remaining half of said share to go to her heirs at law and next of kin, as hereinbefore provided."

At her death the testatrix owned certain real property in New York State. This property constitutes part of the residuary estate and was disposed of by the article above mentioned. It is only to such real property that this action relates.

Lewis Morton Rutherfurd, one of the children of Alice, died in 1920 unmarried and without issue. He was survived by his brothers and sisters and by his father, Winthrop C. Rutherfurd.

Mary Morton died in 1932 a resident of the State of Pennsylvania. She was unmarried and left no issue of her body; she was survived by her two sisters, Helen Morton and Edith Livingston Morton Eustis, and the five Rutherfurd children above mentioned. She was also survived by two adopted children, Lewis Peter Morton, adopted in Pennsylvania in 1925, and Miriam Morton, adopted in the same State in 1930. She had adopted a third child, William

Hazlett Minor, Jr., in 1927, but in 1930 had relinquished said infant to an institution in California for the purpose of adoption by others. Mary Morton left a will under which she exercised the power of appointment conferred on her by the will of her mother.

In 1923 an action for construction of the will of Anna Livingston Morton was begun by the American Security and Trust Company, her executor and trustee, in the Supreme Court of the District of Columbia. In that action a decree was entered which, in effect, adjudged that at the death of Lewis Morton Rutherfurd his surviving brothers and sisters took his trust share to the exclusion of his father, Winthrop C. Rutherfurd. The court construed the will, in using the term "heirs at law and next of kin," as referring to heirs of the blood only. On appeal such judgment was affirmed. (*Rutherfurd* v. *American Security & Trust Co.*, 12 F. [2d] 155.)

The principal questions which must be determined herein are: (1) Did Mary Morton leave "issue" surviving her within the meaning of that term as used in the will of Anna Livingston Morton; (2) if Mary Morton did not leave issue surviving her, who would take the unappointed one-half of Mary Morton's trust as her "heirs at law and next of kin" within the meaning of that phrase as used in her mother's will.

An additional question which might arise as to whether Winthrop C. Rutherfurd is entitled to share in the real property in this State in which Lewis Morton Rutherfurd, his child, had a beneficial interest, seems to have been eliminated by virtue of the document executed by Winthrop C. Rutherfurd and his wife and filed at the trial, wherein they disclaimed any interest in or to such property.

As to the first question above set forth, it seems to me so clear that the adopted children of Mary Morton are not her "issue" within the meaning of that term as used in the will of her mother that no further discussion of that question is necessary beyond a mere statement of the conclusion arrived at.

As Mary Morton left no "issue" within the meaning of her mother's will, she properly exercised the power of appointment of one-half of her trust share in her mother's estate and title to such share of the real property in New York now vests in her trustees, Charles J. Hepburn and the Girard Trust Company.

The second question propounded as to who are the "heirs at law and next of kin" of Mary Morton to take the unappointed one-half portion of her trust under her mother's will, presents a more troublesome problem. As stated, this will affects only real property in this State. The testamentary intention with respect to this matter would control unless it conflicted with some prohibitory provision of New York law. I find no such conflict in this case.

Section 47 of the Decedent Estate Law provides: " The validity and effect of a testamentary disposition of real property, situated within the State, or of an interest in real property so situated, * * * are regulated by the laws of the State, without regard to the residence of the decedent."

Section 114 of our Domestic Relations Law provides that adopted children shall have all the rights of inheritance of natural children, with an exception which is set forth in the section as follows: " But as respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the person adopted is not deemed the child of the foster parent so as to defeat the rights of remaindermen."

The phraseology of this provision is not as clear as it might be. It specifies the " passing and limitation over " of property. This phrase does not necessarily mean a passing which is followed by a " limitation over." It relates rather to an instrument creating some future estate by limitation over. (*Matter of Horn*, 256 N. Y. 294.) The present will creates a future estate. (See Real Prop. Law, § 37.) It provides that the trust principal is to pass by limitation over either to the issue or the heirs at law and next of kin of the life tenant.

The phrase used in the statute as to a foster parent " dying without heirs " is not an apt one. These words cannot have been intended to mean dying without leaving any one who might inherit. It has been construed to mean " dying without children " (*Von Beck* v. *Thomsen*, 44 App. Div. 373), and undoubtedly includes a prov'sion in a will as to a life tenant dying without issue.

Lastly, the statute says that an adoption shall not defeat the rights of " rema'ndermen." The courts have given to this word as used in the section the broad mean ng of designat ng those who will u timate y be entitled to take an estate (*Matter of Leask*, 197 N. Y. 193.) The present will creates a remainder within the the definition of our statute (Real Prop. Law, § 38).

The adopted infants herein say that the section may not be interpreted to prefer one remainderman over another or to prevent an adopted child taking as remainderman. They say that either class of contestants here may be remaindermen depending on how the question is decided as to the right of adopted children to take. It seems to me the intention of the statute in any case where a taking was conditioned on a life tenant dying without heirs, was to prevent an adoption by the one ho ding the life estate from defeating the rights of any person who would be a remainderman were there no adoption.

Careful examination of the cases in our Court of Appeals which have passed on the construction of this statute will clear up what might at first seem to be some conflict with respect to the application thereof. In *Gilliam* v. *Guaranty Trust Co.* (186 N. Y. 127) the trust deed involved provided merely that upon the death of the life tenant the corpus of the trust should be divided among that tenant's heirs at law. There was no provision that made the right of a remainderman to take contingent on the life tenant dying without heirs. Therefore, the decision held that the statutory exception was held not to apply. Adopted children were included as heirs at law under the general provisions of the adoption statute.

In *Matter of Leask* (*supra*) the will involved trust provisions that if the life tenant left a child surviving him such child should receive the principal. If the life tenant left no child then the principal was to revert to the testator's residuary legatees, his nephews and nieces. The life tenant had adopted a child and the question was whether such adopted child took 'n preference to the nephews and nieces. It was held that the exception applied because nephews and nieces would have taken if the foster parent had died without heirs (chi'dren).

In *Matter of Horn* (*supra*) the question involved was whether a child adopted by the testator's wife's sister long before the making of the will could take under a devise to a child or children of the wife's sister. There was no precedent estate and no remainder involved. The court held that the adopted child could take because there was a suffic'ent descript on of the particular adopted child in the will to make clear that it was the testator's intention to include him. The court further held that the exception in the statute did not app'y because there was no possibility of any subsequent action by survivors defeating the intention of the testator. The opinion states (p. 297): " The only instance in which the adopted child is not deemed to be the child of the foster parent is where future estates may be. cut off by such adopt on. Where the passing by limitation over of real or personal property is dependent on a parent dying without heirs or children, it would be very easy for a person having no child or children to adopt one and thus cut off the contingent remainder. The statute was aimed at such a possibility. Such is the reasoning of *Matter of Leask* (*supra*). That case and this restriction in section 114 have no application here, as Joseph Horn gave the adopted son a bequest by description with the same effect as if he had named him. There was no possibility of any subsequent act on by survivors defeating the intention of the testator."

The rationale of these decisions clearly is that the exception in section 114 of the Domestic Relations Law protects one who would ultimately receive a future estate, if the holder of the precedent estate dies without heirs, from being cut off by the adoption of a child by the holder of the prior estate.

If the decision in *U. S. Trust Co.* v. *Hoyt* (150 App. Div. 621) holds contrary to these views, I think that it must be deemed to be overruled by the authorities above cited. (See *Hopkins* v. *Hopkins*, 202 App. Div. 606, 608; affd., 236 N. Y. 545; *Matter of Marsh*, 143 Misc. 609.)

Considered solely from the viewpoint of the testatrix's intention, it seems to me that it was clear. that she did not intend to have adopted children take under the clause " heirs at law and next of kin." The testatrix was a stranger to this adoption by her daughter which occurred long after her death. The whole tenor of the will indicates the intention by the testatrix to make a selection of remaindermen confined to her lineal descendants and that she used " heirs at law and next of kin " in that sense. Likewise, it is clear that power of appointment was only intended to be given as to one-half of the estate and that the adoption would, in effect, grant such power over the whole, if it be held that the adopted children take as heirs at law or next of kin.

Therefore, whether viewed from the viewpoint of testamentary intention or of the effect of New York laws with respect to the rights created by adoption, I must find that the unappointed one-half of Mary Morton's trust share is vested in her sisters and the children of her deceased sister and not in her adopted children.

The views that I have arrived at make it unnecessary to decide the effect of the relinquishment of William Hazlett Minor, Jr. It. likewise renders unimportant the decision of the question of the propriety of receiving in evidence the decision and judgment in the litigation had in the District of Columbia and of the statutes existing in that territory with respect to adoption and descent.

For the purpose of the record I will strike out these exhibits.

Findings may be settled on notice and decision and judgment entered in accordance herewith.