In the Matter of the Accounting of ELEANOR D. WATSON et al., as Executors of WILLIAM G. WATSON, Deceased.

Surrogate's Court, Monroe County, July 11, 1950.

*John G. Shaw* and *Donald R. Harter* for executors, petitioners.

*Paul B. Hanks,* special guardian for Helen E. Stiles and another, infants, respondents.

*John P. Lomenzo,* special guardian for Geoffrey W. Hill and another, infants, respondents.

WITMER, S. The court is asked to construe testator's will to determine whether adopted children of one of his daughters, Helen W. Hill, are remaindermen under paragraph " Fifth ". thereof. Evidence of the testator's knowledge that his said daughter could not have natural children was received. The testator had two daughters, and they both survive him. At the date of his will, on February 4, 1946, his daughter, Eleanor Stiles, had one child, a daughter, a minor a little over two years old, and since his death another daughter has been born to her. His daughter Helen was married on June 13, 1942, and she and her husband, finding themselves unable to have natural children, discussed the matter of adoption of children with the testator and with her mother and sister and sister's husband. It was testified that these discussions occurred in December, 1945, before testator made his will. It appears that the testator approved of his daughter's adoption plans, but cautioned her and her husband to be careful in their choice because such adopted " child would be theirs just as much as if he had been born to them ". It was testified that oral application to the adoption agency for a child was promptly made after the December, 1945, discussions, but it appears that the formal petition for adoption was made much later. On February 4, 1946, testator made his will in which in paragraph " Fifth " he established a trust of the bulk of his estate for his wife for life. He then provided as follows:

" Upon her death  *  *  *  I direct my trustee to divide the principal of the trust fund then remaining into as many equal shares as I have children then living, and including a separate equal share for the child or children of any child of mine who may then be deceased.

" The share of each child of mine then living shall continue to be held in trust,  *  *  *  and the income therefrom paid to such child  *  *  *  during such child's life and upon her death the principal of the said trust fund then remaining shall

be paid to her *descendants* then living equally, per stirpes, and in the event she shall leave no *descendants* her surviving, then * * * to the *descendants* of any other child of mine equally, per stirpes, and in the event that there are no such *descendants* of other children of mine, then * * * to the persons entitled to receive the same had I at that time died the intestate owner thereof.

" Any share set apart upon the death of my wife for any child or children of a deceased child of mine *born* after my death shall be paid over to such child or children equally * * *. If there shall be living at the death of my wife any child or children of a deceased child of mine and who shall have been *born* during my lifetime, his or their share shall be continued in trust * * *. In the event of the death of any such *grandchild* prior to receiving in possession the entire principal of the trust, the balance of the principal shall thereupon be distributed as though *such child* had died the intestate owner thereof." (Emphasis added.)

In December, 1946, ten months after the execution of this will, the daughter Helen and her husband received into their home for consideration of adoption the respondent, Geoffrey W. Hill, born November 18, 1946. The testator saw this child at least weekly during the next six months, until in June, 1947, when testator was stricken ill. By midsummer his illness affected his mind as well as his body and he died on November 26, 1947. During this six-month period testator grew very fond of Geoffrey and referred to him as his grandchild. When his wife asked him if his will made provision for Geoffrey, testator replied, " Oh, yes, that is all taken care of." Although this latter was received subject to being stricken out, no motion was later made to strike it out. Proof was also offered to show that there was in testator's safe deposit box after his death, a copy of his will, in which in his own handwriting after the several clauses " children of any child of mine " he had inserted in said paragraph " Fifth " of his copy of the will the words " by adoption or direct ", said copy having been signed by the testator but not witnessed. Although it was offered in evidence as an exhibit, it was excluded.

After testator's death Helen W. Hill and her husband formally petitioned for the adoption of Geoffrey on December 13, 1947, and such adoption was approved by court order on May 14, 1948. Thereafter and in December, 1948, they received into their home another child, the respondent Eleanor W. Hill, for

consideration of adoption, and said child was formally adopted by them by court order early in 1950, just before the institution of this proceeding.

It appears that testator's widow and two children would like the will construed so as to include the adopted children, and the special guardian for such children strongly contends for such construction. The special guardian for the infant Stiles children opposes such construction.

Of course, the intention of the testator, if revealed in the will, controls. At first blush, testator's use of the word " descendants ", as quoted above, seems to indicate that he meant to include those who should be the legal heirs of his daughters, at their respective deaths. (*Matter of Walter,* 270 N. Y. 201; *Matter of Cook,* 187 N. Y. 253, 260–261; *Matter of Foster,* 108 Misc. 604, 610; and see *Matter of Roebuck,* 79 Misc. 589.) But that word must be read in connection with the other portions of the paragraph which refer to it. In the preceding subparagraph the testator refers to " the child or children of any child of mine ". In the succeeding subparagraph the testator refers to such share as might be set aside for " any child or children of a deceased child of mine born after my death ", and later in the same subparagraph he makes the same reference to such child or children " born during my lifetime "; and in the last sentence refers to " any such grandchild ". These clauses modify the word " descendants ". To be sure, the provisions for the children of a deceased child *born* before or after testator's death were designed to avoid the rule against unlawful suspension of the power of alienation; but it is significant that no mention of adopted children was made in connection therewith. In the two last subparagraphs he provides for a gift over to other designated relatives in the event of the death of the first taker without child or children. The entire paragraph, read as a whole, reveals that by the use of the term " descendants ", the testator did not intend to designate a broader group than natural child or children, but used such term to mean natural child or children, and no others.

Even so, in many cases where a testator has made a gift to the child or children or heirs of a beneficiary in the case of the latter's decease, it has been held to include an adopted child. (*Matter of Cohn,* 297 N. Y. 536, affg. 271 App. Div. 775, affg. 184 Misc. 258; *Matter of Horn,* 256 N. Y. 294; *Matter of MacRae,* 189 N. Y. 142, 147; *Matter of Cook,* 187 N. Y. 253, 260–261, *supra*; *Gilliam* v. *Guaranty Trust Co.,* 186 N. Y. 127,

138; *Von Beck* v. *Thomsen,* 44 App. Div. 373; *Matter of Hecker,* 178 Misc. 449.)   In such cases, however, there was no gift over to the testator's other kin in the event of failure of children or heirs of the first taker.   In the present case we have such a gift over, and we are confronted squarely with the statute (Domestic Relations Law, § 115) which provides in part as follows: " As respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the foster child is not deemed the child of the foster parent so as to defeat the rights of remaindermen."

In the face of such statutory provision and the gifts over contained in this will, as well as the reference to " child or children of a deceased child " and " such grandchild ", it must be held that the adopted children are not eligible to take under this will, and do not prevent the gift over to the descendants of Eleanor Stiles from taking effect.   (*Matter of Leask,* 197 N. Y. 193, 197; *Matter of Hopkins,* 102 App. Div. 458; *Matter of Conant,* 144 Misc. 743; and see *Matter of Horn,* 256 N. Y. 294, 297, *supra.*)

The fact that the testator made his will in early 1946 without mentioning adopted children of his daughters indicates that the omission was at that time intentional or that the discussions which it is testified were had with him occurred after the will was executed.   The latter would seem to be the fact, because he later made changes on a copy of his will indicating a desire to include adopted grandchildren.   Such changes also indicate that he did not believe that he had provided for adopted grandchildren in his will as drawn, which clearly is the fact.   The suggested changes in his will were never embodied in a legally executed testamentary instrument, and the court cannot make the amendments which he, himself, failed to make.

This court has occasion to pass upon a great many adoptions, and is very much interested in adopted children and in advancing and protecting their interests.   It is, therefore, with regret that the construction is made herein denying to the adopted infant respondents a right to share under this testator's will.

Submit decree accordingly.