VON BECK v. THOMSEN et al.

(Supreme Court, Appellate Division, First Department. November 17, 1899.)

1. ADOPTION—CONSENT OF PARENTS—NECESSITY.
   Adoption Laws 1873, c. 830, as amended by Laws 1887, c. 703, § 11, declares that, whenever a child has been abandoned, the person maintaining it may adopt it, without the consent of its parent, within six months from the time such person obtained custody of the child. *Held* that, since the limitation in such section only applied where the child was abandoned after its enactment, a person maintaining a child abandoned previous to the adoption of the statute was entitled to adopt it without the consent of the parent, though proceedings therefor were not begun within the time limited.

**2. SAME—OBJECTIONS TO PROCEEDINGS.**

An objection to a proceeding for the adoption of a child that the agreements for its adoption were not executed in the presence of the judge before whom the proceedings were had is immaterial, where, by the order entered, the judge himself certifies that the persons adopting the child appeared before him, that the child was present, and that such parties executed the necessary consents.

**3. SAME—RIGHTS OF ADOPTED CHILD—INHERITANCE—TRUSTS.**

Laws 1873, c. 830, as amended by Laws 1887, c. 703, prescribing the proceeding for adoption, declares (section 10) that a child when adopted shall have all the rights of the relation of parent and child, including the right of inheritance, except that, as to the limitation over of property in trust dependent on the foster parent dying without heirs, such child shall not be deemed to sustain such relation to such parent as to defeat the rights of remainder-men. *Held*, that a policy directing payment to the wife of insured, and, on her death before insured, to her children, for their use, does not create a trust, within such exception, since on the death of the wife the surviving children took a vested interest in the policy, not as beneficiaries of a trust, but as the persons for whom the contract was made.

**4. SAME—RIGHT TO INSURANCE FOR BENEFIT OF CHILDREN.**

Under Laws 1873, c. 830, as amended by Laws 1887, c. 703, § 10, providing that a child, when adopted, shall sustain towards the person adopting it the relation of parent and child, and shall have all the rights of that relation, including that of inheritance, a child adopted after the issuance of a policy payable to its foster mother, and on her death to her children, is entitled to share with the other children on the happening of the contingency.

Action by Sylvia Von Beck against Hugh A. Thomsen and another to recover an interest in certain insurance. Judgment for plaintiff.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

William G. Davies, for plaintiff.
Louis C. Raegener, for defendants.

INGRAHAM, J. The facts out of which this controversy arose are as follows: Baron Christian Thomsen, a resident of the city of New York, was insured in three insurance companies, by four policies of life insurance, aggregating $22,500. These policies were dated in the years 1858, 1865, and 1866. By the policies of the Manhattan Life Insurance Company, the insurance was for the sole use of Mrs. Florentine Thomsen, wife of the insured, and the amount was to be paid "to the said insured, her executors, administrators, and assigns, for her sole use; * * * and, in case of the death of the said Florentine Thomsen before the decease of the said Christian Thomsen, the amount of the said insurance shall be payable to her children, for their use." The third policy, issued by the New England Mutual Life Insurance Company, was for the benefit of Florentine Thomsen, the wife of the insured, if she should survive him; otherwise, for the benefit of his then surviving children, and the surviving descendants of any then deceased child or children. A policy of the Germania Insurance Company was for the sole benefit of Florentine Thomsen, to be payable to her, "and, in case of the death of the said Florentine Thomsen before the decease of the said Christian Thomsen, the amount of the said insurance shall be payable after her death

to her children for their use." At the time that these policies were executed the insured was married to Florentine Thomsen, and there were two children of such marriage living, who are the defendants in this action,—one child, Hugo A. Thomsen, born on October 17, 1850; another, Petita, born November 23, 1854. Florentine Thomson, wife of the insured, died in the city of New York on November 29, 1895, leaving these two children surviving, and the insured died in the city of New York on May 28, 1898. There was no issue of any deceased child.

In December, 1875, the insured and his wife, by proceedings taken in the court of common pleas for the city of New York, adopted the plaintiff, and an order of adoption was on December 23, 1875, signed by Charles P. Daly, chief judge of said court; and the question submitted is whether or not this plaintiff, as an adopted child of the said Baron Christian Thomsen and his wife, Florentine Thomsen, was entitled to any portion of the moneys paid under these insurance policies before mentioned.

This adoption was under chapter 830 of the Laws of 1873. That act, as amended by chapter 703, Laws 1887, after prescribing the proceedings for an adoption, by section 10 provides that:

"A child, when adopted, shall take the name of the person adopting, and the two thenceforth shall sustain toward each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation including the right of inheritance, * * * except that as respects the passing and limitation over of real and personal property, under and by deeds, conveyances, wills, devises and trusts, dependent upon the person adopting dying without heirs, said child adopted shall not be deemed to sustain the legal relation of child to the person so adopting so as to defeat the rights of remainder-men."

We have thus, at the time of the death of the wife of the insured, when the interests of the children of the marriage accrued, the provision that the child when adopted should sustain towards the adopting parents the legal relation of parent and child, and have all the rights of that relation, including the right of inheritance.

The defendants take several objections to the proceedings which resulted in the order for the adoption of the plaintiff, but we think that none of them affect the validity of the adoption. First, it is stated that the consents required by the statute do not appear to have been given. The petition of the insured and his wife, upon which the proceeding was instituted, stated that the child was then about 4½ years old, and had been in the family and under the care of the petitioners since the month of March, 1874, something over 18 months; that the parents of the child were not known, but that a society called the "Foundling Asylum of the Sisters of Charity in the City of New York" had received and maintained said infant child until the month of March, 1874, when said child was delivered and assigned by the said society to the petitioners to adopt, maintain, and educate the same; and that the petitioners were desirous of adopting the child, under the act of the legislature before referred to. Upon this petition an order was granted requiring the parties interested and the said society, the Foundling Asylum of the Sisters of Charity in the City of New York, to appear before the chief judge of the court of

common pleas on a day named, and upon that day the parties did appear before the said chief judge, and executed an instrument whereby Christian Thomsen and Florentine, his wife, agreed to adopt the said minor female child abandoned by its parents, and about the month of July, 1871, received and cared for by the society called "Foundling Asylum of the Sisters of Charity in the City of New York," and which child was delivered to the said petitioners by the said society, to be adopted and maintained and educated by the said petitioners, about the month of March, 1874. They further agreed, jointly and severally, that the said child should be adopted and treated by the petitioners, and each of them, in all respects, as their own child should be treated, and should be brought up in the Roman Catholic religion. There was also executed on said day a consent to adopt the said child, to bring up the said child in the Roman Catholic religion, and to treat the same in all respects "as our own lawful child should be treated." Upon these papers an order was signed by the chief judge of the court of common pleas which recited the petition of the said Christian Thomsen and Florentine, his wife, praying to have the adoption by them of a certain minor female child abandoned by its parents legalized by an act of the legislature referred to; and that it having appeared to the satisfaction of the said chief judge that the said child was a minor child of the age of about 5 years, and was abandoned by its parents, and that the parents were not known; and that said infant child was received and taken under the care, charge, and custody of the society called the "Foundling Asylum of the Sisters of Charity in the City of New York"; and the said society, acting by its proper officer, having given their consent to the adoption of the said child by the said Christian Thomsen and Florentine Thomsen, his wife; and that the said persons adopting the said child now called "Sylvia," and the child adopted, and the said society the Foundling Asylum of the Sisters of Charity in the City of New York, by their proper officer, having appeared before him; and the necessary consent having been signed, and an agreement having been duly executed by the said Christian and Florentine Thomsen, the persons adopting said child, to the effect that the child shall be adopted and treated, in all respects, as their own lawful child should be treated; and all the said persons appearing before the said chief judge having been examined by him personally,—he did thereby order, decree, and direct that "the said minor female child called 'Sylvia,' and theretofore called 'Lora,' shall henceforth be regarded and treated, in all respects, as the child of the said Christian Thomsen and Florentine, his wife, and shall take the name of Sylvia Thomsen, and the two shall henceforth sustain towards each other the relation of parents and child, and shall have all the rights, and be subject to all the duties, of that relation, subject, however, to the exceptions in said act set forth."

The objection taken by the defendants is that it did not appear that the consent of the parents of the child was obtained. By section 5 of the act it is provided:

"Except in the cases provided for in the next section, a legitimate child cannot be adopted without the consent of its parents, if living, or the survivor, if

one is dead; nor an illegitimate child without the consent of its mother, if she is living."

By section 11 it is provided that:

"Whenever a parent has abandoned or shall abandon an infant child such parent shall be deemed to have forfeited all claim that he or she would otherwise, have, as to the custody of said child or otherwise, against any person who has taken, adopted and assumed the maintenance of such child; and in such case the person so adopting, taking and assuming the maintenance of such child may adopt it under the provisions of this act, with the same effect as if the consent of such parents had been obtained. In all cases of abandonment after this act takes effect the person adopting shall proceed under the provisions of this act within six months after he or she has assumed the maintenance of such child; in such case of abandonment, the county judge may make the order provided for in this act without the consent of such parent or parents."

It appeared in the proceeding that the child had been abandoned before the passage of the act, she having been received by the asylum in the month of July, 1871, and having been adopted by the petitioners in the month of March, 1874. The act in question was passed on June 25, 1873, and thus, when the act was passed, the parents had abandoned the child; and, under section 11 of the act, the person so adopting, taking, and assuming the maintenance of such child may adopt it under the provisions of the act before referred to, with the same effect as if the consent of the parents had been obtained. It was only in case of the abandonment of the child after the act takes effect, namely, after June 25, 1873, that, under the provisions of section 11, the person adopting the child must proceed within six months after he or she has assumed the maintenance of such child.

The objection also taken that the instruments were executed in the presence of a person other than a judge before whom the proceedings were had is not of substance, as, by the order entered, the judge himself certifies that the persons adopting the child appeared before him, that the child was also present, and these parties had executed the necessary consents, and an agreement had been executed by the persons adopting the child, as provided for by the statute. We do not think that any of the objections taken by the defendants to the jurisdiction of the judge or the validity of the proceedings for the adoption of the child are well taken.

The point is further taken by the defendants that the policy of insurance the proceeds of which constitute the subject-matter of this action created trusts which are, by the specific language, exempt by the operation of the statute of adoption, and the defendants seek to bring the right to share in these policies within the exception contained in section 10 of the statute. It seems to us, however, that the right to recover or to receive the moneys under these policies of insurance cannot be said to be the passing over of real and personal property under and by a deed, conveyance, will, devise, or trust dependent upon the person adopting dying without heirs. By the execution of these policies of insurance, there was created a contractual relation between the insurance companies and the persons for whose benefit the insurance was effected. The obligation of the insurance companies was that,

upon the death of the insured, the insurance companies would pay to the persons named a sum of money. There was no trust created by the policy. The children of the insured had no interest in the policy, except upon the contingency that the insured's wife should die before the insured. The wife of the insured was primarily the person for whose benefit the policies were taken out, and, if she survived her husband, to her would the amount of the policies be payable. There were certainly no trusts created for her benefit, or for the benefit of her children, in case of her death. Her relation was one simply of a party to a contract in whose favor the contract had been made, and who would be entitled to receive payment of a sum of money upon the happening of the contingency contemplated, viz. the death of the husband. Upon the death of the wife, by the express terms of the policy, this right to receive a sum of money upon the death of the insured passed to her children; but it was her children that survived her, or the descendants of a deceased child at the time of her death. Her children, before her death, had no right in the money to be paid. Their right depended entirely upon the insured's surviving his wife, and this contract contemplated the conditions existing at the time of the wife's death. It was the children at that time in existence to whom the money was payable. Upon the death of the wife, the children then in existence took a vested interest in the policy; but it was not as beneficiaries of a trust, but as the persons for whose benefit the contract had been made. There was no "trust," within the formal meaning of that term; no trustee; no trust fund; no cestui que trust. A simple contract existed by which these insurance companies had obligated themselves to pay upon a certain contingency a sum of money to the persons who would bear the relation of children to the insured, or to his wife, at the time of the death of the insured, providing that the wife did not survive the insured. There was therefore no passing or limitation over of real or personal property under or by a deed, conveyance, will, devise, or trust which was dependent upon the person adopting, i. e. the insured and his wife, dying without heirs. The meaning of this clause is quite apparent. It applies to a case where property has been conveyed or bequeathed or devised to a person, with the remainder to his children, or, if no children, with remainder over; and in that case the statute provided that the adoption could not affect the remainder over so that the adopted child would take as though he was a child of the blood of the parties adopting. But that condition is not here presented. The question is not as to the person who would inherit or be entitled to receive a remainder or trust fund in default of the heirs of the insured or his wife, but whether this plaintiff bore to the insured or his wife the relation of a child, which would entitle her to receive the portion of a sum of money which, by a contract made between the adopting parent and a third party, was to be paid to the parent's children upon his death.

It also seems to us that it was the intention of this contract that all the children of this marriage who were in existence at the time

the policies became payable should share in these policies, whether born before or after the issuance of the policies. There is nothing in the policy that would justify the conclusion that a child born to the insured and his wife, after the taking out of the policy, would not have been entitled to share in the proceeds. The policies all speak of the children in existence at the time of the death of the wife, who would succeed at that time to the right of the wife to share in the proceeds of these policies; and, when we look at the relation which is created by this formal adoption,—that "the two [parent and child] thenceforth shall sustain toward each other the legal relation of parent and child, and have all the rights, and be subject to all the duties, of that relation,"—we see that it was the intention of the legislature to put an adopted child upon the same relation to its parents that a natural child would have. Upon such an adoption, the relation of parent and child is created to the same effect as though the child adopted had been born, at the time of the adoption, as a natural child of the adopting parents. The adopted parents inherit from the adopted child as though such child had been a natural child. The parents would be the next of kin of the adopted child as though the adopted child had been a natural child. The adopted child would inherit from the parents as though such child had been a natural child. All of these rights that spring into existence at the time of adoption put the adopted child in exactly the same position as though the child was the natural child, with the exception that, as to a conveyance or bequest or devise which would pass to others upon the death of the adopting parent without issue, such adoption shall not change the disposition of such property. Thus, the plaintiff, immediately upon adoption and from thenceforth, sustained the relation to the insured and his wife of a child, and she then had all the rights of that relation. Now, what were the rights incident to that relation, under the policies of insurance? These insurance companies had agreed to pay to the persons who occupied the relation of children to the insured or his wife at the time the insured died a sum of money. This plaintiff occupied that relation to both the insured and his wife at the time of the wife's death, and thus, under the express provisions of the policies of insurance, she became entitled to receive her proportionate share of the moneys payable under the policies.

It would follow, therefore, that the plaintiff is entitled to judgment, and it is directed accordingly, with costs. All concur.