*In re* MINER ESTATE.

CARUTHERS APPEAL.

1. DESCENT AND DISTRIBUTION—ADOPTION—STATUTES.

Amendment of adoption statute in effect at the time of the death of person who is claimed to have died intestate would affect the distribution of an intestate's estate through a deceased adopted child (CL 1948, § 710.9, as amended by PA 1957, No 255).

2. ADOPTION—DESCENT AND DISTRIBUTION.

The adoptive parents of an adopted child now stand in the place of natural parents in all respects as though he had been the natural child of such adoptive parents and is the latter's heir-at-law of the lineal and collateral kindred of the adopting parents and entitled to inherit from such person or persons in accordance with the law of descent and distribution (CL 1948, § 710.9, as amended by PA 1957, No 255).

3. SAME—CHILD OF ADOPTED CHILD—DESCENT AND DISTRIBUTION.

The natural child of an adopted child of adopting parents is a lawful lineal descendant of the adopting parent under present statute, hence, would be an interested party for purposes of contesting will of the adopting parent (CLS 1956, § 8.3, subd 8; CL 1948, § 702.80; § 710.9, as amended by PA 1957, No 255).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur, Statutes § 468.
[2] 1 Am Jur, Adoption of Children § 63.
  Right of adopted child to inherit from kindred of adoptive parent. 43 ALR2d 1183.
[3] 1 Am Jur, Adoption of Children § 56; 57 Am Jur, Wills § 806.
  Right of children of adopted child to inherit from the adopting parent. 15 ALR 1265.
[4] 1 Am Jur, Adoption of Children § 75.
[5] 1 Am Jur, Adoption of Children § 79.

4. SAME—ORDER OF ADOPTION—BURDEN OF PROOF.
  An adoption order implies a finding of the necessary facts to
  sustain it and party attacking it has the burden of proof.

5. SAME—ESTOPPEL.
  The executor of the estate of testatrix who had petitioned for
  the adoption of the mother of contestant is estopped, as was
  the testatrix, to dispute the validity of the adoption order
  which had been consented to by society to whom only the
  mother had released the child, the adoption order itself im-
  plying a finding of the necessary facts to sustain it.

Appeal from Jackson; Boardman (H. D.), J.
Submitted January 13, 1960. (Docket No. 60, Calen-
dar No. 48,129.) Decided June 6, 1960.

In the matter of the estate of Louise H. Miner,
deceased, Kathleen Miner Crary, residuary legatee,
and City Bank & Trust Company, named as an ex-
ecutor and trustee, presented will for probate. John
Miner Caruthers, the son of a deceased adopted
child, entered contest. Proceedings certified to cir-
cuit court where jury was demanded. Contest dis-
missed on motion. Contestant appeals. Reversed
and remanded for further proceedings.

*Maxwell F. Badgley,* for proponent City Bank &
Trust Company.

*George Brett Shaeffer* and *Rosenburg, Painter &
Stanton* (*Lawrence L. Bullen,* of counsel), for con-
testant.

EDWARDS, J. Louise H. Miner died October 5,
1957, leaving a will which bequeathed the bulk of
her estate to a surviving adopted daughter, Kath-
leen Miner Crary. The will also contained a bequest
of $15,000 to the City Bank & Trust Company of
Jackson, Michigan, as trustee, and directed payment
of the income on this sum to John Miner Caruthers,
referred to in the will as testatrix' grandson.

John Miner Caruthers appeared and filed objections to the will, charging fraud and undue influence and that testatrix lacked mental competence to make a valid will. City Bank & Trust Company, as one of the executors and proponents of the will, thereupon filed a motion to dismiss the contest on the ground that the contestant was not a person who had any interest in the estate of Louise H. Miner. The circuit judge, after a hearing and the taking of testimony on the motion to dismiss, granted it, and contestant Caruthers appeals.

From the record before the circuit judge concerning the motion to dismiss, the following relevant and undisputed facts appear: John Miner Caruthers is the natural son of Maxine Miner Caruthers and her husband, Eugene Caruthers. His mother had been the subject of an adoption petition and order filed in Jackson county probate court. The adoption order was dated July 2, 1919, and was based upon a consent signed by the Michigan's Children's Home Society.

The adoption file, which was introduced in the hearing on the motion to dismiss, contained a release from the natural and legal mother, but did not contain a release from the father although the release referred to the child as legitimate.

Maxine Miner Caruthers died in 1944. It appears from this record that her adoption was never attacked or disputed in any way during the lifetime of the parties immediately concerned with the adoption.

This case presents 2 interesting questions pertaining to the Michigan adoption statutes:

First, is the natural and legal son of a (now deceased) mother who was herself an adopted child, an "interested party" for purpose of contesting the will of the person who adopted his mother?

Second, on this record, is the adoption order of 1919 subject to collateral attack and void because the adoption file does not contain or refer to a release from the father?

The circuit judge held that contestant was not an interested party because he was neither "issue" nor "a lineal descendant" within the meaning of the Michigan statutes of descent and distribution. Having thus decided the first question, he had no need to pass on the second.

As to the first question, the controlling statutory language pertaining to will contests is "any interested party." CL 1948, § 701.36 (Stat Ann 1943 Rev § 27.3178[36]). Contestant claims to be an interested party in the will because he claims that if it is disallowed, he thereupon becomes an heir-at-law of deceased under the Michigan statutes of descent and distribution.

The applicable statute providing for the descent of real property is as follows:

"When any person shall die seized of any lands, tenements or hereditaments, or of any right thereto, or entitled to any interest therein in fee simple, or for the life of another, not having lawfully devised the same, they shall descend, subject to the payment of all prior charges as provided in this act, in the following manner:

"First, 1/3 to his widow, and the remaining 2/3 to his issue; and, if he leaves no widow, then the whole thereof to his issue, and, if the intestate shall be a married woman, 1/3 thereof to her husband and the remaining 2/3 to her issue; and, if she leaves no husband, then the whole thereof to her issue." CL 1948, § 702.80 (Stat Ann 1943 Rev § 27.3178[150]).

The word "issue" is statutorily defined as including "all the lawful lineal descendants." CLS 1956, § 8.3, subd 8 (Stat Ann 1957 Cum Supp § 2.212, subd 8).

Hence, the question becomes, is Caruthers, on this record, a "lawful lineal descendant" of the deceased, Louise H. Miner?

Just 2 weeks prior to the death of Louise H. Miner in 1957, an amendment to the adoption statutes of Michigan became effective. The section with the new language italicized now reads as follows:

"Upon the entry of the order of adoption, such child shall, in case of a change of name, thereafter be known and called by said new name, and the person or persons so adopting said child shall thereupon stand in the place of a parent or parents to such child in law, *in all respects as though the adopted child had been the natural child of the adopting parents,* and be liable to all the duties and entitled to all the rights of parents thereto. *Thereupon there shall be no distinction in any way between the rights and duties of natural children and adopted children,* and such child shall thereupon become the heir-at-law of such adopting person or persons, as well as the heir-at-law of the lineal and collateral kindred of the adopting person or persons, and entitled to inherit property from such person or persons in accordance with the law of descent and distribution of this State: Provided, That nothing herein shall affect his right to inherit from or through his natural parents. *On the death of the adopting parents, custody of the adopted child shall be determined as though the child was natural born of the adopting parents."* CLS 1956, § 710.9, as amended by PA 1957, No 255 (Stat Ann 1959 Cum Supp § 27.3178[549]).

It appears clear that it is this statute which is controlling in our present case since it is the one which was in effect at the death of the intestate. *In re Loakes' Estate,* 320 Mich 674; *In re Dempster's Estate,* 247 Mich 459.

See, also, 18 ALR2d 960.

Appellant contends that absent the 1957 amendatory language just quoted, he would still be entitled

to be regarded as an heir-at-law under the statutes of descent and distribution. In this regard, he relies upon *In re Rendell's Estate,* 244 Mich 197, and *Fisher* v. *Gardnier,* 183 Mich 660, as well as a 1956 opinion of the attorney general, No 2405, p 104.

The case upon which the trial judge based his grant of the motion to dismiss was decided subsequent to both cases and the opinion. It held squarely that for purposes of a statute granting a State inheritance tax exemption, the term "lineal descendant" did not include the natural child of an adopted daughter of a decedent. *In re Smith Estate,* 343 Mich 291 (51 ALR2d 847).

The opinion in this case contained this language (p 299):

"Able *amicus curiae* argues to us that:

" 'A sound policy requires that the consequences of an adoption should, for the adopting parents, be the same as the consequences of a natural birth and that if a couple has through the adoption process accepted the responsibilities of parents that couple should have the same rights and privileges as are enjoyed by others who became parents by the birth process.'

"The argument is compelling but it is addressed to the wrong forum. It lies within the province of the legislature, not of this Court, to assimilate the position of the adopted child completely to that of the natural child, should sound social policy so require."

It was decided October 3, 1955. Subsequent thereto, the Michigan legislature enacted the amendments to the adoption laws which we have previously quoted. The amendatory language included that adoptive parents of an adopted child should stand in the place of his parents "in all respects as though the adopted child had been the natural child of the adopting parents," and "thereupon there shall be no

distinction in any way between the rights and duties of natural children and adopted children." The statute as it now stands makes reference to an adopted child as "heir-at-law of the lineal and collateral kindred of the adopting person or persons, and entitled to inherit property from such person or persons in accordance with the law of descent and distribution of this State."

Appellee's basic argument, however, does not deny this. It admits that the 1957 amendment gave the adopted child the right to inherit under the statutes of descent and distribution, but argues that it made no reference to the children of the adopted child.

We cannot escape the conclusion that the 1957 legislative enactment resulted directly from the invitation contained in the *Smith Case*, and that our current case is governed by it.

We believe that the right to have their children inherit under the statute of descent and distribution was one of "the rights" as to which the 1957 amendment abolished any remaining distinctions as between "natural children and adopted children." We can think of few instances where the legislative intent has been more clearly indicated.

On this record (assuming adoption of his mother by Louise H. Miner), John Miner Caruthers is a lawful lineal descendant of Louise H. Miner, and hence an "interested party" for purposes of the will contest.

This, of course, requires us to deal with appellee's contention that the 39-year-old adoption order was void because neither it nor the file contained reference to a release by the natural and legal father to the agency which consented to the adoption.

Appellee's brief, in this regard, asserts that the "father, William Craig, did not consent to her adoption." This record contains no such affirmative showing. The consent upon which the adoption or-

der is based is that of the Michigan Children's Home
Society, which is in the probate file. What is miss-
ing is any release by the father to the Michigan
Children's Home Society, similar to that of the
mother which is contained in the file and dated a
year and a half preceding the date of the adoption.

At this point, we have no way of ascertaining
what the actual facts were. Of the many possibili-
ties, we will mention only 2. There may have been
a release signed by the father which was subsequent-
ly lost from the file. The father may have died
before the adoption, and this fact may have been
proved before the probate judge. Failure to have
such a fact properly recorded would hardly render
the adoption order void.

In such speculation, we are engaged in groping
in the mists of history. Appellee suggests that the
judicial order is void where a fact which is needed
to show statutory compliance is thus obscured. To
the contrary, the adoption order itself implies a
finding of the necessary facts, and the burden of
proof is on the party attacking it. *Slattery* v. *Hart-
ford-Connecticut Trust Co.,* 254 Mich 671; *Von Beck*
v. *Thomsen,* 44 App Div 373 (60 NYS 1094), aff'd
167 NY 601 (60 NE 1121); *Wilson* v. *Otis,* 71 NH
483 (53 A 439, 93 Am St Rep 564); 1 Am Jur, Adop-
tion of Children, § 33.

In the *Slattery Case, supra,* this Court, in uphold-
ing an adoption order subjected to a collateral at-
tack, said (p 675):

" 'The better rule would seem to be that the adop-
tion will be upheld as against a collateral attack un-
less the want of jurisdiction is affirmatively shown.'
1 CJ, Adoption of Children, § 114, p 1394."

Appellee relies upon *In re Ives,* 314 Mich 690. In
that case the natural mother brought habeas corpus
to attack a recently entered adoption order on the

ground that she received no notice of the proceeding. The parties and the facts herein are dissimilar.

Appellee City Bank, in attacking the adoption proceedings of 1919, stands at best in the shoes of testatrix. Testatrix petitioned for the adoption, recognized it, reared her adopted daughter in her own home, and never in any wise prior to her death sought to upset the adoption order. Her will describes contestant as "my grandson." Louise H. Miner would long ago have been held estopped to dispute the validity of the adoption order. *Slattery* v. *Hartford-Connecticut Trust Co., supra; In re Gunn's Estate,* 227 Mich 368. So is her representative after her death.

Reversed for denial of motion to dismiss will contest, and remanded for further proceedings. Costs to appellant.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.