WHEELING DOLLAR SAVINGS & TRUST CO., TRUSTEE, *etc.*

*v.*

KAREN STIFEL HANES *and* DONNA STIFEL STENGEL

(No. 13732)

Decided June 28, 1977.

Rehearing Denied October 10, 1977.

*Bachmann, Hess, Bachman & Garden, Gilbert S. Bachman,* for Karen Stifel Hanes and Donna Stifel Stengel.

*Galbraith, Seibert & Kasserman, James F. Seibert,* for Arthur C. Stifel, III.

NEELY, JUSTICE:

The Court granted this appeal for the purpose of reviewing the law annunciated in Syllabus Point 2 of *Security National Bank & Trust Co. V. Willim*, 151 W. Va. 429, 153 S.E.2d 114 (1967) concerning the treatment of adopted children under testamentary and inter vivos trusts executed before 1959 when the Legislature enacted *W. Va. Code*, 48-4-5 [1959].[1] Syllabus Point 2 of the *Willim* case says:

"In a case involving the construction of a will made in 1900 by a testatrix who died in 1908, and particularly involving construction of language by which certain property was devised in trust for the benefit of a granddaughter of the testatrix for life and, upon her death, if she should leave a child or children surviving her, to such child or children, and the further provision that if the granddaughter should die without issue surviving her, the property should pass to other

[1] *W. Va. Code*, 48-4-5 was originally enacted in 1882 as Chapter 132, § 4 *Acts of the Legislature*, Regular Session, 1882, and was amended on numerous occasions, including the recent years of 1925, 1943, 1959, 1967, and 1969. The 1959 version of the statute, which was involved in *Security Nat. Bank & Trust v. Willim*, 151 W.Va. 429, 153 S.E.2d 114 (1967), stated in pertinent part:
"From and after the entry of such decree of adoption, the adopted child shall be, to all intents and for all purposes, the child of the person or persons so adopting him or her and shall be entitled to all the rights and privileges and subject to all the obligations of a natural child of such adopting parent or parents."
This remains the Legislature's basic statement that adopted children are to be accorded equal treatment in law with that accorded natural children. In 1967 the Legislature emphasized this principle by substituting "legitimate issue" for the word "child" appearing second in the above-quoted portion of the statute. This amendment prevents courts from defeating the purpose of the statute by drawing artificial semantic distinctions between "children" and "issue" or related words. The 1969 amendment made only technical changes, substituting "order" for "decree" throughout the statute.
For convenience in this opinion we refer to *W. Va. Code*, 48-4-5, [1969] although we recognize that the basic legislative policy with which we are concerned dates from 1959.

specified persons, a child adopted by the grand-daughter, the life tenant, after the death of the testatrix cannot take such property under the will as a child or as issue of the granddaughter, the life tenant."

In light of the dramatic changes which have been made in the organization of society in the last 20 years and the pervasive tendency of modern adults to adopt minor children who then become both emotionally and financially indistinguishable from their own children, today we overrule Syllabus Point 2 of *Security National Bank & Trust Co. v. Willim, supra,* as well as Syllabus Point 1 of *Wheeling Dollar Savings & Trust Co. v. Stewart,* 128 W. Va. 703, 37 S.E.2d 563 (1946).[2] We hold today that any testamentary or inter vivos trust governed by the laws of the State of West Virginia, regardless of the date of its execution, including by way of example and not by way of limitation, all trusts executed before 1959, shall be construed under the provisions of *W. Va. Code,* 48-4-5 (1969) and adopted children shall take under any provision which uses the words "child" or "children" or any general words which are loosely, if not technically, synonomous with the words "child" or "children," including again by way of example and not by way of limitation, such words as "natural children," "descendants," "heirs," "issue," or any other similar words. Further, we hold that adopted children under the provisions of such inter vivos or testamentary trusts may only be excluded from the operation of such trusts if the trustor or testator has specifically excluded them by unambiguous explicit language.

---

[2] *Wheeling Dollar Savings & Trust Co. v. Stewart,* 128 W. Va. 703, 37 S.E.2d 563 (1946), Syllabus Point 1, today overruled, provides as follows:

"In the absence of an intention to do so, explicitly set forth in a will creating a trust for a named beneficiary, or clearly shown by circumstances surrounding its execution, the terms "descendant", "descendants", "direct descendants", and words equivalent thereto, do not include children adopted by the beneficiary of such trust."

## I

In the case before us Karen Stifel Hanes and Donna Stifel Stengel appeal a judgment of the Circuit Court of Ohio County entered on the pleadings in a declaratory judgment action brought by the Wheeling Dollar Savings & Trust Company for aid in construing an inter vivos trust agreement under which Wheeling Dollar is trustee. The question below was whether adopted children are "children" within the meaning of the trust instrument and entitled to share in the distribution of the trust estate upon the death of their adoptive father, the trust's life beneficiary. The circuit court excluded the adopted children from sharing in the distribution of the trust estate.

On March 31, 1938, Arthur C. Stifel executed an irrevocable inter vivos trust agreement designating his son, Arthur C. Stifel, Jr., as income beneficiary for life. The trust instrument provided for distributions of income, and ultimately principal, to designated beneficiaries upon the death of Arthur C. Stifel, Jr. Persons entitled to such trust distributions included the life beneficiary's surviving "widow who was living with him at the time of his death" and the life beneficiary's "children and/or descendants of the deceased child or children."

Arthur C. Stifel, Jr. died November 29, 1974, survived by his second wife, Niki C. Stifel, a son by a former marriage, Arthur C. Stifel, III, and by two adopted daughters, Karen Stifel Hanes and Donna Stifel Stengel.[3] There is some question concerning whether Niki C. Stifel was living with Arthur C. Stifel, Jr. at the time of

---

[3] The complaint below alleged that Arthur C. Stifel, Jr. was survived by another adopted daughter, Sylvia de Cuevas. Sylvia de Cuevas did not appear in the proceedings below, although she was joined as a party defendant. The order of the circuit court held that Sylvia de Cuevas was not an adopted child of Arthur C. Stifel, Jr., and that part of the order is not before us in this appeal. Accordingly we limit our discussion of the rights of adopted children to appellants Karen Stifel Hanes and Donna Stifel Stengel, who, it is admitted, are the adopted children of Arthur C. Stifel, Jr.

his death, so as to qualify for a share of the trust distribution. That question was not resolved below and is not before us now. We are concerned solely with the rights of the adopted daughters who were excluded from the trust distribution as the result of the circuit court's granting the motion of appellee, Arthur C. Stifel, III, for judgment on the pleadings. As matters stood below at the time of this appeal, Arthur C. Stifel, III was the only child entitled to a trust distribution.

The provisions of the trust relevant to our consideration of this matter are as follows:

SECOND: The net income of the Trust shall be paid not less frequently than quarter-annually in as nearly equal instalments [sic] as practicable to Arthur C. Stifel, Jr., a son of the Trustor, during his lifetime, and thereafter:

(1) If said Arthur C. Stifel, Jr. should leave surviving him a widow who was living with him as his wife at his death, and a child or children and/or descendants of a deceased child or children, then one-half (1/2) of said net income shall be paid to such widow and the other half thereof, or, if he should leave no such widow, the whole thereof, shall be paid to such child or distributed among such children and/or descendants of children, in equal shares per stirpes.

(2) If said Arthur C. Stifel, Jr. should leave surviving him such a widow but no child nor descendant of any child, then the entire net income shall be paid to such widow.

(3) If said Arthur C. Stifel, Jr. should die leaving no widow nor issue of any degree, or upon the death of any such widow and such children and descendants of children prior to the termination of this Trust, then such income shall be paid to or distributed among William Flaccus Stifel, a son of the Trustor, and/or Joan A. Stifel, a daughter of the Trustor, and/or their children and descendants of children in equal shares per stirpes.

(4) During any period in which there is no person within any of the foregoing classes entitled to receive the income, it shall be accumulated.

THIRD: Upon the termination of any estate hereunder, accrued income shall belong to the next estate.

## II

There is extensive conflicting authority throughout the United States on the issue now before us. Our own reading of the cases, however, indicates that the clear direction of the law is in favor of parity for adopted children in all matters, including the right to take under family trusts executed long before adoption became a pervasive phenomenon.[4] Although the West Virginia Legislature was silent with regard to this problem when it enacted *W. Va. Code*, 48-4-5 [1969], it is the clear policy of the Legislature of this State that adopted children shall be on a par with natural children. *W. Va. Code*, 48-4-5 [1969] is as follows:

"Upon the entry of such order of adoption, the natural parent or parents, any parent or parents by any previous legal adoption, and the lineal or collateral kindred of any such parent or parents, except any such parent who is the husband or wife of the petitioner for adoption, shall be divested of all legal rights, including the right of

---

[4] There is a trend among courts to give retroactive effect to legislatures' public policy declarations with respect to adopted children, as the following statement, *in re, Trust Under Will of Holden*, 207 Minn. 211 at 224, 291 N.W. 104 at 110 (1940), indicates:

"Adoption statutes providing that an adopted child shall have the status of a natural one are intended to repeal and supersede statutes and rules of law under which the adopted child did not enjoy such status and the rights incident thereto. There simply can be no justification for measuring the rights of an adopted child under a statute conferring on it the status of a natural one by statutes or rules of law which withhold or deny such status."

Our decision today brings us into accord with this trend. *See also, Breckinridge v. Skillman's Trustee*, 330 S.W.2d 726 (Ky. Ct. App. 1959); *Brown v. Trust Company of Georgia*, 230 Ga. 341, 196 S.E.2d 872 (1973); and *Haskell v. Wilmington Trust Company*, 304 A.2d 53 (Del. Sup. Ct. 1973).

inheritance from or through the adopted child under the statutes of descent and distribution of this State, and shall be divested of all obligations in respect to the said adopted child, and the said adopted child shall be free from all legal obligations, including obedience and maintenance, in respect to any such parent or parents. From and after the entry of such order of adoption, the adopted child shall be, to all intents and for all purposes, the legitimate issue of the person or persons so adopting him or her and shall be entitled to all the rights and privileges and subject to all the obligations of a natural child of such adopting parent or parents.

"For the purpose of descent and distribution, from and after the entry of such order of adoption, a legally adopted child shall inherit from and through the parent or parents of such child by adoption and from or through the lineal or collateral kindred of such adopting parent or parents in the same manner and to the same extent as though said adopted child were a natural child of such adopting parent or parents, but such child shall not inherit from his or her natural parent or parents nor their lineal or collateral kindred, except that a child legally adopted by a husband or wife of the natural parent shall inherit from the natural parent of such child as well as from the adopting parent. If a legally adopted child shall die intestate, all property, including real and personal, of such adopted child shall pass, according to the statutes of descent and distribution of this State, to those persons who would have taken had the decedent been the natural child of the adopting parent or parents."

We are not unmindful of *W. Va. Code*, 41-1-10 (1923) which provides in part:

"The validity and effect of wills executed prior to the time this Code becomes effective [January 1, 1931] shall be determined by the laws of this State in force at the time of their execution."

Of course this provision, which influenced the result in the *Willim* case, would not be applicable to the inter

vivos trust under consideration; however, since our rule also applies to testamentary trusts, we must give careful consideration to *W. Va. Code*, 41-1-10 [1923] and to the principle that a will speaks as of the date of its execution.

The cardinal rule in the construction of testamentary or inter vivos instruments is that a court should give effect to the intent of the trustor or testator. *Farmers & Merchants Bank v. Farmers & Merchants Bank*, ____ W. Va. ____, 216 S.E.2d 769 (1975).[5] This has always been the law, both before and after the enactment of *W. Va. Code*, 48-4-5 [1969]. Accordingly, while we recognize that use of such words as "issue," "descendants," and "child" could be interpreted to exclude adopted children, we also recognize that adoption was not as pervasive in the early part of this century as it is today. Therefore, it is fair to assume that the question of adopted children did not stand out in the minds of most testators or trustors until more recently. The language of most trusts or wills is little help here, since the language rarely indicates whether trustors and testators gave serious thought to the question of children adopted by their beneficiaries. Accordingly, the meaning to be assigned to such words as "issue," "descendants," and "child" is usually ambiguous and, therefore, subject to construction or interpretation. We find the issue well stated and resolved by Mr. Justice Weintraub of the Supreme Court of New Jersey in the case of *In The Matter of The Estate of Coe*, 42 N. J. 485, 201 A.2d 571 (1964) where he said:

> "We cannot believe it probable that strangers to the adoption would differentiate between the natural child and the adopted child of another.

---

[5] Ordinarily a will takes effect as of the date of the testator's death, but if the language of the will shows that the testator intended that a testamentary disposition made in the will should be effective at a different date, the intention of testator controls, if no positive rule of law is violated by giving effect to the testator's intent. *Guthrie v. First Huntington Nat'l. Bk.*, 155 W. Va. 496, 184 S.E.2d 628 (1971); *Mauzy v. Nelson*, 147 W. Va. 764, 131 S.E.2d 389 (1963); and *Tharp v. Tharp*, 131 W. Va. 529, 48 S.E.2d 793 (1948).

Rather we believe it more likely that they accept the relationships established by the parent whether the bond be natural or by adoption and seek to advance those relationships precisely as that parent would. None of us discriminates among children of a relative or friend upon a biological basis. [citations omitted] We ought not impute to others instincts contrary to our own. Nor should be [*sic*] think we are different from our ancestors of 1877. As we have said, the adoption act of that year did not amend human nature; it yielded to it."

It appears to the Court that most testators and trustors establish trusts for the benefit of those persons they love and for the benefit of those persons yet unknown and yet unborn whom such testators and trustors infer that their loved ones will eventually love. While there may be testators and trustors who are so concerned with medieval concepts of "bloodline" and "heirs of the body" that they would truly be upset at the thought that their hard-won assets would one day pass into the hands of persons not of their blood, we cannot formulate general rules of law for the benefit of eccentrics. While a person may still exclude adopted children from the benefits of an inter vivos or testamentary trust in the same way that he may exclude any other person or class of persons from such benefits, the exclusion must be accomplished by explicit language. Such exclusion may not be done by implication or by any general interpretation of words which generations of careless draftsmen have taught are frequently used synonymously with "child" or "children."

Accordingly, in the case before us the judgment of the Circuit Court of Ohio County is reversed and the case is remanded with directions to enter an order consistent with this opinion permitting the appellants, Karen Stifel Hanes and Donna Stifel Stengel, to share as children in the benefits conferred by the trust of Arthur C. Stifel.

*Reversed and remanded.*