296 S.E.2d 34

**Ward E. MORGAN**

v.

**Guy E. MAYES, Jr. and Medora Mayes.**

**No. 15317.**

Supreme Court of Appeals of
West Virginia.

Sept. 20, 1982.

James D. McQueen, Jr., Huntington, for appellant.

E. Henry Broh, Broh & Vital, Huntington, for appellees.

HARSHBARGER, Justice:

This appeal by Ward E. Morgan contests a Cabell County Circuit Court order dismissing his suit and granting the Mayes' motion for summary judgment. Morgan had challenged Hattie C. Morgan's will, alleging it was the product of undue influence. He was the adopted son of her son, Theo F. Morgan, but the trial court ruled that he was not "an interested person," entitled to challenge the will. W.Va.Code, 41–5–11.[1]

---

1. W.Va.Code, 41–5–11:

"After a judgment or order entered as aforesaid in a proceeding for probate ex parte, any person interested who was not a party to the proceeding, or any person who was not a party to a proceeding for probate in solemn form, may proceed by bill in equity to impeach or establish the will, on which bill, if required by any party, a trial by jury shall be ordered, to ascertain whether any, and if any, how much, of what was so offered for probate, be the will of the decedent. The court may require all other testamentary papers of the decedent to be produced, and the inquiry shall then be which one of all, or how much of any, of the testamentary papers is the will of the decedent. If the judgment or order was entered by the circuit court on appeal from the county court, such bill shall be filed within two years from the date thereof, and if the judgment or order was entered by the county court and there was no appeal therefrom, such bill shall be filed within two years

Ward Morgan was named Ward E. Spiker at birth. His mother and father were later divorced, and in 1932 his mother married Theo F. Morgan, Jr., who adopted him. For our purposes, the parties agree that the adoption was effective. He was reared by the Morgans from age three until adulthood, frequently visiting his grandmother, Hattie C. Morgan. Hattie's son, Theo, predeceased her.

In 1976, Hattie Morgan went to live in the Mayes' nursing home, residing there until her death in 1978. During this period, she executed a will leaving two thousand dollars to the First United Methodist Church of Huntington and the remainder of her estate to Medora Mayes.

When Morgan was adopted, Code, 48–4–5 prohibited adopted children from inheriting by representation,[2] and so the trial court found that Morgan could not impeach his grandmother's will.

In *Wheeling Dollar Savings and Trust Co. v. Hanes*, 160 W.Va. 711, 237 S.E.2d 499 (1977), we discussed applying Code, 48–4–5 to trusts executed before the 1959 change:

> There is extensive conflicting authority throughout the United States on the issue now before us. Our own reading of the cases, however, indicates that the clear direction of the law is in favor of parity for adopted children in all matters, including the right to take under family trusts executed long before adoption became a pervasive phenomenon. Although the West Virginia Legislature

was silent with regard to this problem when it enacted *W.Va.Code*, 43–4–5 [1969], it is the clear policy of the Legislature of this State that adopted children shall be on a par with natural children. (Footnote omitted.) *Wheeling Dollar Savings and Trust Co. v. Hanes, supra*, 160 W.Va. at 716, 237 S.E.2d, at 502.

Here appellant contends that this statutory revision should be applied retroactively. The majority rule is that statutes enlarging the inheritance rights of adopted children, in effect at the death of the person from whom the inheritance is claimed, control the adopted child's rights; but retroactivity has little to do with it.

*In Re Gray's Estate*, 168 F.Supp. 124 (1958), and *In Re Miner's Estate*, 359 Mich. 579, 103 N.W.2d 498 (1960), are very close on their facts to this case. In *Gray's Estate*, the adopted son of the testatrix's daughter sought to challenge the will that made no provision for him, his mother having predeceased the testatrix. Beneficiaries of the will moved to dismiss because the adopted son did not have standing. The law in effect as of his 1946 adoption provided that an adopted child did not inherit from parents of the adoptor. In 1954 the law was changed to permit an adopted child to inherit in the same manner as a child by birth. Citing numerous cases, the district court held that "the right of an adopted child to inherit is to be determined by the law in force at the death of the person from whom the inheritance is

---

from the date of such order of the county court. If no such bill be filed within the time prescribed, the judgment or order shall be forever binding. Any bill filed under this section shall be in the circuit court of the county wherein probate of the will was allowed or denied."

**2.** The version of W.Va.Code, 48–4–5 in effect as of the 1933 adoption provided:

"... [T]he adopting parent or parents of the child shall be invested with every legal right in respect to obedience and maintenance on the part of the child, as if such child had been born to them in lawful wedlock; and the child shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance, and the right of inheritance in the *estate of such adopting parent or parents* as if born to him or them in lawful wedlock; *except*

*that such child shall not be capable of taking property expressly limited to the heirs of the body of the adopting parent or parents, nor property coming from the lineal or collateral kindred of such adopting parent or parents by right of representation ....*" (Emphasis added.)

The present version of W.Va.Code, 48–4–5 [1969] allows adopted children to inherit by representation:

"For the purpose of descent and distribution, from and after the entry of such order of adoption, a legally adopted child shall inherit from and through the parent or parents of such child by adoption and from or through the lineal or collateral kindred of such adopting parent or parents in the same manner and to the same extent as though said adopted child were a natural child of such adopting parent or parents ...."

claimed." 168 F.Supp., at 126 (see cases cited therein).

■ The court wrote that application of the 1954 statute did not involve retroactivity: "[The adopted child's] right of inheritance is determined by the law in force at the time of the death of the testatrix, four years after the enlarging statute of 1954 was enacted. Therefore, the statute is not given a retrospective but a prospective effect." 168 F.Supp. at 127. It noted that this rule is consistent with the analogous principle that rights under a will vest only upon the death of the testator. *See Charles v. State Workmen's Compensation Commissioner,* 161 W.Va. 285, 241 S.E.2d 816 (1978).

*In Re Miner's Estate, supra,* involved a will contest by a natural son of the testatrix's adopted daughter. Proponents moved to dismiss the suit on the ground that the contestant had no interest in the estate. The Supreme Court of Michigan reversed, finding that the statute in effect at the death of the person through whom inheritance was claimed, controlled—a statute that had become effective only two weeks before the testatrix's death in 1954, though the adoption was in 1917.

The basic rule established in *Gray's Estate* and *Miner's Estate,* that the controlling statute is the one in effect at the date of death of the person through whom inheritance is claimed, is enunciated in many other cases in varied fact patterns.[3]

■ Also, this Court has not hesitated to extend the class of persons entitled to benefits of remedial legislation in other areas.

*See, e.g., State v. Board of Trustees of Policemen's Pension,* 147 W.Va. 795, 131 S.E.2d 612 (1963) (extending benefits of a police pension provision); *Wheeling Dollar Savings and Trust Co. v. Hanes,* W.Va., 237 S.E.2d 499 (1977); *Sitzes v. Anchor Motor Freight, Inc.,* 169 W.Va. 698, 289 S.E.2d 679 (1982); (retroactively applying our abolition of interspousal immunity). Nowhere is this policy more evident than in workmen's compensation cases. This Court has interpreted workmen's compensation statutory provisions to better achieve their remedial aim. *See, e.g., Sizemore v. State Workmen's Compensation Commissioner,* 159 W.Va. 100, 219 S.E.2d 912 (1975); *Pnakovich v. State Workmen's Compensation Commission,* 163 W.Va. 583, 259 S.E.2d 127 (1979); *Cole v. State Workmen's Compensation Commissioner,* 166 W.Va. 294, 273 S.E.2d 586 (1980). A statutory extension of adopted children's inheritance rights must be broadly applied in order to effectuate the remedial purpose of the legislation.

■ The majority rule is sound and we do not hesitate to adopt it. We hold that when inheritance rights are broadened thereby, the statute of descent and distribution in effect at the date of death of the person from whom an adopted child would take, controls; and not the statute in effect at the date of adoption.

Language to the contrary in *Security National Bank and Trust v. Willim,* 151 W.Va. 429, 153 S.E.2d 114 (1967), and *Trust Co. v. Stewart,* 128 W.Va. 703, 37 S.E.2d 563 (1946), is disapproved.[4] As an

---

3. *Huskea's Estate v. Doody,* 391 So.2d 779 (Fla. App.1980); *Breckinridge v. Skillman's Trustee,* 330 S.W.2d 726 (Ky.1960); *In Re Williams,* 154 Me. 88, 144 A.2d 116 (1958); *In Re Holden's Trust,* 207 Minn. 211, 291 N.W. 104 (1940); *In Re Millward's Estate,* 166 Ohio St. 243, 141 N.E.2d 462 (1957); *Conville v. Bakke,* 400 P.2d 179 (Okl.1965); *In Re Cilley,* 400 Pa. 567, 163 A.2d 302 (1960); *May v. Curry,* 385 S.W.2d 603 (Tex.Civ.App.1965). *Contra, Gray v. Morgan,* 236 Miss. 245, 110 So.2d 346 (1959) (the statute provided for readoption to gain benefit of the new enactment); *In Re Avery,* 176 N.J.Super. 469, 423 A.2d 994 (1980) (recognizing the majority rule to the contrary).

4. Both *Stewart* and *Willim* were will construction cases. They interpreted the terms "de-

scendants", "direct descendants", "child", and "issue", to mean heirs of the body, and refused to permit an adopted child to share in distribution under wills when these general terms were used to describe the beneficiaries, holding that testators did not intend to include adopted children by such language. In this regard, *Hanes* overruled *Stewart* and *Willim. Wheeling Dollar Savings and Trust Co. v. Hanes,* 160 W.Va. 711, 237 S.E.2d 499 (Syll. Pts. 1 and 2).

Appellees rely on language in *Stewart* indicating that the statute in effect at the time of the adoption controls. However, the *Stewart* court made plain that the question presented therein was the intent of the testator, and not an interpretation of the status of an adopted child to inherit in case of intestacy: "We are not con-

heir who would take in the absence of a will, appellant clearly is an interested person entitled to attempt to impeach that will. *Jackson v. Jackson*, 84 W.Va. 100, 99 S.E. 259 (1919) (Syllabus Point 3).

Accordingly, we reverse the summary judgment dismissing Morgan's complaint and remand for further proceedings consistent with this opinion.

Reversed and remanded.

cerned here with ... the rights of the adopted children relative to descent and distribution from their mother by adoption." 128 W.Va., at 709, 37 S.E.2d, at 567. This language from *Stewart* is quoted approvingly in *Willim.* 151 W.Va., at 435, 153 S.E.2d, at 118.