364 S.E.2d 34

**Richard BEVER**

v.

**Carol Mustoe BEVER.**

**No. 17568.**

Supreme Court of Appeals of West Virginia.

Dec. 16, 1987.

Timothy R. Ruckman, Summersville, for plaintiff.

Larry E. Losch, Summersville, for defendant.

PER CURIAM:

This is an appeal by Richard Bever from a summary judgment order entered by the Circuit Court of Nicholas County on June 9, 1986, in a case involving the probate of a will and the specific performance of a contract to make a will. The circuit court ruled that the testator had, by entering into a subsequent marriage, revoked a will leaving the appellant all his property. The court also refused to require specific performance of a contract to make a will. On appeal the appellant argues that questions of material fact remained undeveloped in the case at the time of the court's ruling and that under the circumstances the court erred in entering summary judgment. We agree, and we reverse the judgment of the Circuit Court of Nicholas County.

Coleman Bever, the appellant's uncle, owned a farm located near Craigsville, West Virginia. For many years he worked the property as a "hobby" farm with the appellant's father, Richard Bever. In 1964 Coleman Bever moved to Richwood, and the appellant's father continued to operate the farm until 1976, when he became ill.

After the appellant's father became ill, the appellant, who had left home at age eighteen, returned to the farm to care for it and for his father. His father died in 1978.

According to the appellant, after he returned to the farm, his uncle, Coleman Bever, who owned the farm, stated that he would leave him the farm and the remainder of his estate if the appellant would continue to operate the property. The appellant agreed, and, according to his petition, he operated the farm until his uncle's death in 1983.

After the death of the appellant's father, Coleman Bever, on February 13, 1979, executed a will. By that will he left his entire estate, both real and personal, to the appellant and named the appellant his executor.

On April 1, 1982, Coleman Bever married Carol Mustoe. West Virginia Code § 41-1-6 provides that, with certain exceptions, a subsequent marriage revokes a prior will. Coleman Bever's will was not one which fell within the exceptions. It consequently was revoked by the marriage.

Following the marriage, Coleman Bever conveyed approximately twelve acres of the farm to himself and to his new wife as joint tenants with right of survivorship. He also placed $5,000 in a certificate of deposit in the names of himself and his wife as joint tenants with right of survivorship. Other money was placed in the names of Coleman Bever and other relatives with survivorship provisions. Mr. Bever did not republish his will after his marriage to Carol Mustoe.

On June 5, 1983, approximately a year after he married Carol Mustoe, Coleman Bever died. After his death the appellant attempted to probate the will executed before Coleman Bever's marriage to Carol Mustoe. Carol Mustoe Bever protested the probate because of the provisions of W.Va. Code § 41-1-6 relating to subsequent marriages revoking prior wills. As a result of the protest the Nicholas County Commission ruled that the will was invalid and set aside the probate of it. The court also appointed Carol Mustoe Bever administratrix of the estate of Coleman Bever.

The appellant instituted this proceeding to procure specific performance of his oral contract with Coleman Bever for Coleman Bever to make a will leaving him all his property. In the suit he also sought to

validate the will which Coleman Bever had executed prior to his marriage.

Following discovery, the Circuit Court of Nicholas County ruled that the revocation provisions contained in W.Va. Code § 41-1-6 are absolute and mandatory and that the will executed by Coleman Bever and any possible contract that Coleman Bever had with the appellant were revoked by the provisions of that Code section. Accordingly, the circuit court entered summary judgment against the appellant. It is from that ruling that the appellant now appeals.

■ As a general principle, contracts to make wills are recognized in West Virginia, and those contracts are governed by the same rules and principles that govern other contracts. *Jefferson v. Simpson,* 83 W.Va. 274, 98 S.E. 212 (1919); *Davidson v. Davidson,* 72 W.Va. 747, 79 S.E. 998 (1913). Furthermore, West Virginia, like other jurisdictions, focuses on the substance of a transaction rather than on its form. *Tildesley Coal Co. v. American Fuel Corp.,* 130 W.Va. 720, 45 S.E.2d 750 (1948).

[2] Courts which have considered the question have recognized that the essential, substantial legal undertaking in a contract to make a will is not that the promisor will draw up a paper and execute it, but that he will take the steps necessary to insure that the promisee will receive his property on his death.[1] The general rule is discussed in 94 C.J.S. *Wills* § 116(a)(1) (1956):

> The basis of the rights of the parties to the contract is found in the terms of the contract itself even though a will conforming to it is made. The mere drawing and execution of such a will is not of itself a performance and discharge of the contractual obligation. The rights of the parties under the contract are not varied by the mere fact of execution or nonexecution of the will.

In *Busque v. Marcou,* 147 Me. 289, 86 A.2d 873, 30 L.R.A.2d 1411 (1952), the Maine court examined a number of cases on the subject and recognized that a will is ambulatory in nature and may be revoked at any time prior to death. The court further stated, however, that full performance of a contract to make a will requires not only that he make a will but that he allow it to remain in force until his death. In *Hermann v. Ludwig,* 186 App.Div. 287, 300, 174 N.Y.S. 469, 476 (1919), a New York court recognized that: "[I]t would be a mockery of justice to say that having executed a will, ... [the promisor] fully satisfied her part of the agreement, and was at liberty to revoke it the next day." Page in his treatise on wills has indicated that to perform a contract to make a will, a promisor must not only make a valid will, but leave it in force at his death. *See* 1 Bowe–Parker, *Page on Wills* § 10.20 (1960).

■ Generally it is not material in what manner the failure to carry out the undertaking in a contract to make a will is produced or whether it arises by design or accident. *Bair v. Hager,* 97 A.D. 358, 90 N.Y.S. 27 (1904). For instance, the fact that a promisor in good faith attempts to execute a will and fails to comply with rules relating to execution, does not mean that he has complied with his contract. *Green v. Orgain,* 46 S.W. 477 (Tenn.Ch. App.1898).

A few cases have addressed almost the precise question presented in the case presently before the Court, that question being whether revocation by marriage of a will executed pursuant to a contract to make a will defeats the rights of the promisee to the contract. While the courts are split as to whether the subsequent marriage brings about a revocation of the document, they agree that the marriage does not defeat the substantial rights of the promisee under the contract. The general principle is summarized in 68 C.J. *Wills* § 205 (1934), as follows:

> Where a will pursuant to the contract has been executed before the marriage, it has been held by some authority that the marriage does not operate as such a revocation by operation of law as to discharge the promisor from the obligation or to give the spouse any equal or superi-

---

1. Indeed, a paper called a "will" does not have legal effect and is not a legally cognizable doc-

ument until the testator dies. *Morgan v. Mayes,* 170 W.Va. 687, 296 S.E.2d 34 (1982).

or right to the property affected by the agreement and by other authority that while the will is, like other wills, revoked by a subsequent marriage, the contract and the obligations arising therefrom continue valid and enforceable.

See *Rundell v. McDonald*, 41 Cal.App. 175, 182 P. 450 (1919); *Kloberg v. Teller*, 103 Misc. 641, 171 N.Y.S. 947 (1918).

 West Virginia Code § 41-1-6 is rather unequivocal: "Every will made by a man or woman shall be revoked by his or her marriage, ... except a will which makes provision therein for such contingency ..." In the present case the parties have presented nothing indicating that this rule should be varied where there is a contract to make a will pre-existing the marriage. Nonetheless, this Court is constrained to find, in line with the authorities discussed above, that the fact that a will document is revoked does not destroy the promisor's substantial obligation under the contract to provide for the passage of his property to the promisee.

In situations of the type presented in this case the Court has recognized that once a promisor is dead it is impossible to bring about specific performance of the contract to make a will. However, a court, acting in equity, can do what is equivalent thereto by impressing a trust in favor of the promisee on the property in the hands of the persons who actually receive it on the death of the promisor. *See, Gray v. Merino*, 138 W.Va. 585, 76 S.E.2d 585 (1953).

In syllabus point 3 of *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court stated:

A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

See *Lowery v. Raptis*, 174 W.Va. 736, 329 S.E.2d 102 (1985); *Karnell v. Nutting*, 166 W.Va. 269, 273 S.E.2d 93 (1980); *Consolidated Gas Supply Corp. v. Riley*, 161 W.Va. 782, 247 S.E.2d 712 (1978);

*Anderson v. Turner*, 155 W.Va. 283, 184 S.E.2d 304 (1971).

 Since under the law the appellant, Richard Bever, would be entitled to the benefit of a trust is his favor if he can establish that Coleman Bever entered into a contract to make a will in his favor, this Court believes that an issue of fact relevant to the appellant's right of recovery is the question of whether Coleman Bever actually contracted with him to make a will leaving him all his property. Because the appellant was not afforded an opportunity to develop the facts on that point, this Court believes that, under the rule in the *Aetna Casualty* case, summary judgment was improper.

The judgment of the Circuit Court of Nicholas County is, therefore, reversed, and this case is remanded for trial, taking into consideration the principles set forth herein.

Reversed and remanded.